WILLIAM GOLDSMITH, Appellant, *v.* NATIONAL CONTAINER CORPORATION et al., Respondents.

Submitted January 5, 1942; decided March 5, 1942.

*Benjamin Davidson* for appellant. The plaintiff's cause of action lies in fraud and not in rescission; hence a tender is not necessary. (*Gould* v. *Cayuga County Nat. Bank*, 86 N. Y. 75; 99 N. Y. 333; *Strong* v. *Strong*, 102 N. Y. 69; *Vail* v. *Reynolds*, 118 N. Y. 292; *Kley* v. *Healy*, 127 N. Y. 555; *Belt* v. *American Central Ins. Co.*, 148 N. Y. 624; *Davis* v. *Rosenweig Realty Co.*, 192 N. Y. 128; *Heckscher* v. *Edenborn*, 203 N. Y. 210; *Merry Realty Co.* v. *Shamokin & Hollis Real Estate Co.*, 230 N. Y. 316; *Weigel* v. *Cook*, 237 N. Y. 136; *Brennan* v. *National Equitable Investment Co.*, 247 N. Y. 486; *New York Bankers, Inc.*, v. *Duncan*, 257 N. Y. 160.)

*Marshall M. Bernstein* and *Saul Bernstein* for respondents. The rule that one may affirm a transaction alleged to have been induced by fraud and sue for damages resulting from the fraud does not avail the appellant, because here affirmance of the transaction includes affirmance of the general releases given by appellant as an integral part of the entire transaction. These releases by their express terms bar appellant from recovery for alleged fraud claimed to have occurred a year and a half earlier and not at the time the releases were given. (*Kirchner* v. *New Home Sewing Machine Co.*, 135 N. Y. 182; *Houston* v. *Trower*, 297 Fed. Rep. 558; *Gilbert* v. *Rothschild*, 280 N. Y. 66; *Kamerman* v. *Curtis*, 285 N. Y. 221; *Brassel* v. *Electric Welding Co.*, 239 N. Y. 78; *Taylor* v. *Russell*, 258 App. Div. 305; *E. T. C. Corp.* v. *Title G. & T. Co.*, 271 N. Y. 124.) The general releases which bar the maintenance of this action cannot be set aside unless the appellant restores the consideration received by him. (*Kamerman* v. *Curtis*, 285 N. Y. 221; *Gilbert* v. *Rothschild*, 280 N. Y. 66; *E. T. C. Corp.* v. *Title*

*G. & T. Co.*, 271 N. Y. 124; *New York Bankers, Inc.*, v. *Duncan*, 257 N. Y. 160; *Kley* v. *Healy*, 127 N. Y. 555; *Joslyn* v. *Empire State Degree of Honor*, 204 N. Y. 621.)

LEWIS, J.   We think it was error to grant summary judgment to the defendants-respondents.

The plaintiff chose an action at law as his remedy to recover money damages alleged to have been suffered by reason of the defendants' fraud and conspiracy.   As our decision must rest upon the pleadings and supporting affidavits, we pass directly to a consideration of facts alleged.

The defendant National Container Corporation — to which reference will be made as " National "— is a manufacturer of corrugated boxes.   Its stockholders, directors and officers are the three individual defendants, Kipnis, Ginsberg and Rosenfeld, who control its business policies and are in active charge of its affairs.   In the month of December, 1936, National, George J. Schneider and the plaintiff organized the defendant Anchor Container Corporation — hereinafter referred to as " Anchor "— to conduct a business of the same type as National.   The capital stock of Anchor was held by National, Schneider and the plaintiff — the plaintiff being chosen as a director and president of the new corporation.   The plaintiff also became general manager of the corporation under a contract by which his annual salary was fixed at $10,400 for a term of ten years.   Thereafter, according to the complaint, the defendants, other than Anchor, represented to the plaintiff and to Anchor that National and its affiliates enjoyed " a special arrangement with Southern Kraft Corporation for the purchase of Kraft paper and that if Anchor would also agree to buy Kraft paper from the Southern Kraft Corporation, Anchor would receive and derive the same benefits, terms and advantages from the said Southern Kraft Corporation as those enjoyed and received by the defendant National   *   *   *   by virtue of said special arrangement."  The plaintiff alleges that, relying thereupon, Anchor purchased 4,000 tons of paper from Southern Kraft Corporation during 1937 and thereby became entitled to the benefits

of such " special arrangement." It is also alleged that pursuant to the " special arrangement " National received approximately $342,000 from Southern Kraft Corporation as a refund for paper purchased during 1937 on behalf of Anchor, National and two other corporations which National controlled, of which Anchor was entitled to its proportionate share. Then follow allegations by the plaintiff that the defendants, other than Anchor, knowing the true facts, falsely, fraudulently and knowingly misrepresented Anchor's proportionate share of such refund to be $7,523.78 which was paid to Anchor; that the plaintiff and Anchor were not aware of the true amount of such refund to which Anchor was entitled and that they relied upon such representations and believed the true amount of refund to be $7,523.78 when in fact Anchor was entitled to at least $30,000; that the defendants continued to suppress the true facts as to Anchor's *pro rata* share of the refund; that the plaintiff, in ignorance of the true amount of such refund and the true value of his stock having been wrongfully concealed from him by the defendants, entered into a contract on July 17, 1939, by which, for an inadequate consideration, he agreed to sell his Anchor stock to National, to resign as president and director of Anchor and to cancel his agreement of employment as its general manager. Upon the basis of these alleged facts the plaintiff, as his first cause of action, demands damages in the amount of $10,000 for alleged fraud, deception, misrepresentations and concealments, which sum, he states, is in addition to the alleged inadequate consideration received by him for the sale of his Anchor stock, his resignation as president and general manager of Anchor and the cancellation of his contract of employment. By his second cause of action the plaintiff pleads the same facts but alleges conspiracy by the defendants deliberately to deprive the plaintiff of his true share as a stockholder of Anchor and of the true worth of his interest in his contract of employment.

The single answer interposed by all defendants denies, among other allegations in the complaint, those which

charge fraud and conspiracy. It alleges as affirmative defenses that in accord with the terms of the agreement of July 17, 1939 — which made provision for the sale by the plaintiff of his stock in Anchor, the cancellation of his employment contract and other matters — the plaintiff executed and delivered instruments in writing by which he released and discharged each of the defendants from all claims and demands which he might have against them.

It is the claim of the defendants-respondents that the releases, concededly given by the plaintiff, are an absolute bar to the plaintiff's action unless, after rescinding the contract of July 17, 1939, and the releases, he tenders back the consideration he has received.

Claiming the releases to be voidable because of alleged misrepresentations and concealments by the defendants as to the value of his Anchor stock, the plaintiff elects to affirm the contract of July 17, 1939, and to sue at law in fraud for damages which he claims he has suffered. This, we think, is a remedy which he may pursue.

The basis of the plaintiff's action at law, as pleaded, is that he was induced to cancel his contract of employment and to sell his Anchor stock at a time when he was ignorant of the true value of the stock, which sale — at a price less than its actual value — was accomplished by the defendants by their fraudulent misrepresentations and concealment as to its true value and as to factors, then known to them, which enhanced its value.

It is settled law that where, as alleged by the present plaintiff, a person has parted with something of value as the result of a contract induced by fraud, he may pursue one of three remedies: " He may rescind the contract absolutely and sue in an action at law to recover the consideration parted with upon the fraudulent contract. To maintain such action he must first restore, or offer to restore, to the other party whatever may have been received by him by virtue of the contract. * * * He may bring an action in equity to rescind the contract and in that action have full relief. * * * Such an action is not founded upon a

rescission, but is maintained *for* a rescission, and it is sufficient therefore for the plaintiff to offer in his complaint to return what he has received and make tender of it on the trial. Lastly, *he may retain what he has received and bring an action at law to recover the damages sustained.* This action proceeds upon an affirmance of the contract. * * * " (Emphasis supplied.) (*Vail* v. *Reynolds*, 118 N. Y. 297, 302; *Gould* v. *Cayuga County Nat. Bank*, 99 N. Y. 333, 337; *Sager* v. *Friedman*, 270 N. Y. 472, 479. See 5 Williston on The Law of Contracts [rev. ed.], § 1523, pp. 4264, 4265.)

The rule in *Kamerman* v. *Curtis* (285 N. Y. 221) cited by the respondents in support of the present judgment, is not decisive of the question now before us. There the plaintiff chose to disaffirm the contract alleged to have been induced by fraud and sued in equity for an accounting. The election thus made required him to tender or offer to return the amount received. Here the plaintiff affirms both the contract and the releases and sues at common law for damages suffered.

In the present case the releases given by the plaintiff, which the defendants' answer pleads as a defense, do not bar the present action at law whereby plaintiff seeks damages due to alleged fraudulent misrepresentations and concealments which induced him to give such releases.

The defendants by their answer deny allegations by the plaintiff that he was induced to enter into the contract of July 17, 1939, by reason of the defendants' fraudulent misrepresentations and concealments as to the true amount of refund to which Anchor was entitled from Southern Kraft Corporation, and the true value of the plaintiff's Anchor stock and his employment contract. These issues of fact, and others tendered by the pleadings, should be tried.

The judgments should be reversed, with costs in all courts, and the defendants' motion for summary judgment denied.

LEHMAN, Ch. J., LOUGHRAN, FINCH, CONWAY and DESMOND, JJ., concur; RIPPEY, J., dissents.

Judgments reversed, etc.