Samuel H. Hofstadter, J.
The defendant Frank moves to vacate a warrant of attachment, or in the alternative for an increase of the security furnished when the warrant was granted.
The defendant Frank is the owner of the literary property in a book, originally published in the Dutch and French languages under the title “Anne Frank: The Diary of a Young Girl” (referred to as the Diary). In 1952 the Diary was published in English in the United States and it has also been adapted into a play which has been running in New York for an extended period with marked success.
*566 It appears from the papers that the plaintiff, an author, journalist and playwright, in 1950 made an agreement with Frank by which the plaintiff was exclusively to represent Frank’s interests for the exploitation of the Diary in the United States. In furtherance of this agreement Frank on March 31,1952, authorized the plaintiff, as his agent to negotiate exclusively for one year for presentations of the Diary and to enter into agreements with respect thereto, subject to Frank’s approval of the agreements or any adaptation of the Diary prior to its public presentation. On November 21, 1952, the plaintiff and Frank entered into a written agreement which not alone terminated the March 31, 1952 authorization, but on December 21, 1952, virtually excluded the plaintiff from participation in the fruits of the dramatic or like presentation of the Diary. The plaintiff claims that his execution of the November 21, 1952 agreement was procured by fraud and the resultant controversy is the occasion for this suit.
The action is brought against Frank and Bloomgarden, the producer of the dramatic version of the Diary. The complaint contains four causes of action, one, the third, against Bloom-garden alone, with which we are not here concerned. The first and second causes of action are stated against Frank, and the fourth against both Frank and Bloomgarden.
The motion to vacate the attachment is founded in the main on asserted deficiencies in the papers on which it was granted. The ground of attachment is the admitted nonresidence of the defendant Frank; the right to the attachment is, therefore, not dependent on the nature of the causes of action as prescribed in section 903 of the Civil Practice Act (subds. 5, 6). The plaintiff is, however, still required to show that the action is for the recovery of a sum of money ‘only (Civ. Prac. Act, § 902). Frank’s nonresidence being applicable to all three causes of action against him, if these are solely for the recovery of a sum of money, his right to hold the attachment is clear, aside, of course, from the sufficiency of the supporting proof — a question to be dealt with separately.
Both parties recognize the established rule that when an attachment rests on more than one cause of action all must be of such nature as to authorize attachment, or the right to attachment is lost. (Union Cons. Min. Co. v. Raht, 9 Hun 208, appeal dismissed 68 N. Y. 629; Haroco Co. v. Sahim, 105 N. Y. S. 2d 977; American Eur. Export Co. v. Safran Co., 68 N. Y. S. 2d 174.) Application of this rule to the present case means that all three causes of action against Frank must be for the recovery of a sum of money only (Brown v. Chaminade Velours, *567 Inc., 176 Misc. 238, affd. 261 App. Div. 1071). The defendant urges that the attachment before us violates the rule.
The first cause of action demands $50,000 as damages for the fraud in inducing him to sign the agreement of November 21, 1952, and contains the usual allegations appropriate to a complaint to recover damages for fraud. It is self-evident that this is a cause of action to recover a sum of money only and the defendant does not contend otherwise.
The second cause of action is for breach of the 1950 agreement. It realleges from the first cause of action the relation of the parties and the terms of the 1950 agreement, and alleges further the defendant’s refusal in violation of the agreement to authorize the plaintiff to write a dramatic adaption of the Diary or to have others collaborate with him for that purpose. It alleges due performance and concludes with a demand for $50,000 damages. Standing by itself this is an ordinary claim at law for breach of contract. The defendant urges, however, that the November 21, 1952 agreement bars an action on the 1950 agreement and that no action on the latter may be maintained until the plaintiff has first had the 1952 agreement rescinded in equity. Hence, the defendant argues, the cause of action is in reality for equitable relief. This is matter of defense which may perhaps affect the plaintiff’s right to recover on the second cause of action. It is clear that a defrauded plaintiff is not obliged to seek rescission in equity, but may himself rescind and sue at law to recover the consideration with which he parted upon the fraudulent contract; or he may bring an action at law for damages (Goldsmith v. National Container Corp., 287 N. Y. 438, 442-443; Sager v. Friedman, 270 N. Y. 472, 479). Not alone is the choice his, but the different remedies are no longer exclusive of one another (Civ. Prac. Act, § 112-e). It is unnecessary to determine now whether the plaintiff may, in complete disaffirmance of the November 21, 1952 agreement, recover for breach of the 1950 agreement or how far, if at all, damages for this latter breach may be included in the damages recoverable under the first cause of action. In Goldsmith v. National Container Corp. (supra), the plaintiff was allowed to sue at law for damages in the face of an outstanding general release executed by him. (See 6 Corbin on Contracts, § 1293, p. 152; Whitney v. Richards, 17 Utah 226; Hayes v. Atlanta & Charlotte Air Line R. Co., 143 N. C. 125.)
It is sufficient for present purposes that the plaintiff is not asking for equitable relief by way of rescission and that he is free, if he wishes, not to pray for such relief. So long as he confines himself to a demand for money only in an action by *568 its very nature one at law, as the second cause of action for breach of contract clearly is, he cannot be held to have pleaded a cause of action incapable of sustaining an attachment.
In the fourth cause of action against both Frank and Bloom-garden, the plaintiff demands $50,000 damages for the wrongful use in the adaptation of the Diary as now produced on the stage of the plaintiff’s ideas and material. The warrant designates the cause of action as one for ‘1 wrongful appropriation of ideas.” It is argued by the moving defendant that because this cause of action alleges that a certain radio adaptation made by plaintiff is owned jointly by him and Frank only an action in equity for an accounting will lie between them as joint owners of literary property. The defendant urges, too, that this cause of action must fail for the added reason that Bloomgarden’s use of material owned by both the plaintiff and Frank under license from the latter is not wrongful and at most gives the plaintiff the right to demand an accounting from Frank. This cause of action is, however, not confined to the radio script; it refers to other material claimed by the plaintiff alone and it joins both Frank and Bloomgarden as tortfeasors. As in the case of the second cause of action, no definitive decision on the maintainability of the fourth cause of action is now necessary. The defendant cites no authority which denies the right to sue at law for the wrongful appropriation of literary property. Without question the plaintiff demands damages in tort and nothing else; as such, the cause of action supports an attachment. The affidavit on which the attachment was granted offers no proof whatever in support of the fourth cause of action. Once it is found that, as pleaded, this cause of action is for the recovery of a sum of money only, it may be regarded as superfluous, for the purpose of this motion. The situation is similar to that in Roth v. American Piano Mfg. Co. (35 Misc. 509) where the attachment affidavit failed to present sufficient proof of damage under one cause of action. The court held that this lack did not invalidate the attachment but merely required a reduction in its amount, by eliminating the damages claimed under this cause of action. This problem does not arise here, for the attachment is- not for the total demand of the three causes of action under discussion.
Deficiency in the proof in support of one or more causes of action or even, as in the case of the fourth cause of action, a complete absence of proof, either of the basic facts or of damage, does not necessarily destroy the right to attachment. Nor will possible legal infirmity in a particular cause of action be *569 determinative. If every cause of action pleaded is of a kind in which attachment is authorized — as I hold to be the case here— whether ultimately maintainable or not, and if the proof establishes prima facie one of those causes of action and damage on that cause in the amount for which the warrant has been issued, the plaintiff is entitled to hold his attachment (American Reserve Ins. Co. v. China Ins. Co., 297 N. Y. 322, 325). The plaintiff here has met this requirement.
The court cannot accept the defendant’s contention that the unliquidated damages asked are too speculative and problematical to justify the attachment. It is said that since the stage version of the Diary, as now presented, was not written by the plaintiff, it may not serve as the measure of the yield of a version written by him had he been given the opportunity to do so. I do not consider Broadway Photoplay Co. v. World Film Corp. (225 N. Y. 104) and Bernstein v. Meech (130 N. Y. 354) authority for the defendant’s position. Any dramatic version must necessarily derive its ultimate source from the Diary itself. The success of the current version shows presumptively, at least, that a competent adaptation, springing from the same basic material, should meet with like popular favor. There is often an element of uncertainty in unliquidated damages; yet, recovery is not denied on that account and the law makes the best possible approximation in the circumstances. The use here, in granting the attachment, of the return from the current play as a presumptive yardstick of the plaintiff’s damage was, therefore, entirely proper, and justifies the amount for which the warrant was issued.
The parties have discussed at length the terms of the agreement between the two defendants under which the Diary is now being presented, and under which Frank is required to indemnify Bloomgarden against the plaintiff’s claims and to that end Bloomgarden is allowed to withhold moneys accruing to Frank. The defendant Frank insists that none of his money has been attached and that he has no money or property in this State and that, therefore, the attachment should be vacated. The court does not reach this question at all, for the defendant Frank has appeared generally in the action. When personal jurisdiction is not obtained a levy may be necessary to acquire jurisdiction and after a warrant of attachment has been granted service in some form must be made to hold the attachment (Civ. Prac. Act, § 905). The absence of a levy is not ground for vacating an attachment when, as here, the court has personal jurisdiction of the defendant by virtue of his voluntary appearance. If there has been no levy, this may be a defense in the *570 action brought by the plaintiff and the Sheriff in aid of the attachment. It has, however, no bearing on the present motion. The motion to vacate the attachment is accordingly denied.
Since the attachment is now upheld the defendant can rid himself of it only by a successful defense of the action on the merits. He is entitled to adequate security to meet the expense of the litigation (Thropp v. Erb, 255 N. Y. 75). The alternative relief is granted, and the plaintiff is directed to give additional security of $5,000 so that the total security will be $7,500. Settle order.