[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 04-10274 and 04-14264

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 5, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-60092-CV-WJZ

MICHAEL URFIRER,

Plaintiff-Appellant,

versus

ROBERT CORNFELD,
JEFFREY CORNFELD, et al.,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(May 5, 2005)

Before BLACK, MARCUS and FAY, Circuit Judges.

MARCUS, Circuit Judge:

At issue in this case is whether prior rulings rendered by a New York State

Supreme Court in divorce proceedings between Appellant Michael Urfirer and his

wife, Leslie Cornfeld, collaterally estop Urfirer from now bringing fraud and breach of fiduciary duty claims against his wife's father and brother, Appellees Robert and Jeffrey Cornfeld, in federal district court in the Southern District of Florida. Urfirer's claims allege that Robert and Jeffrey Cornfeld fraudulently induced him to sign a provision of his divorce settlement agreement with Leslie Cornfeld waiving any claims he might have to any of his wife's family's property and other holdings.

Because we find that the prior rulings of the New York divorce court have only interpreted the scope of the waiver -- without ever reaching the question of whether Robert and Jeffrey Cornfeld fraudulently obtained the waiver -- and because Urfirer's claims against the Cornfelds seek damages from nonparties to the divorce proceedings, they are claims that the divorce court did not and could not have previously adjudicated. Accordingly, we reverse the district court's grant of summary judgment as to Counts I and II of Urfirer's complaint. As to the remaining claims seeking disclosure of financial information related to the alleged fraud, we hold that collateral estoppel bars only Count VI of Urfirer's complaint, since the New York court has already determined that Urfirer waived his right to raise any claims arising out of his status as nominal shareholder of Cambridge Asset Management, Inc. Accordingly, we affirm in part, reverse in part, and

remand for further proceedings consistent with this opinion.

**I.**

This case has its origins in the complex, protracted, and on-going divorce proceedings between Appellant Michael Urfirer and his wife, Leslie Cornfeld, who is the daughter of Appellee Robert Cornfeld and the sister of Appellee Jeffrey Cornfeld. Urfirer and Leslie Cornfeld entered into a settlement agreement (the "Agreement" or the "settlement agreement") on June 1, 2001, resolving many of their financial and property distribution issues in anticipation of their divorce. Divorce proceedings commenced in the Supreme Court of the State of New York, County of New York, IAS 51 (the "divorce court") in 2001.

Pursuant to the settlement agreement, Urfirer waived all claims against the real or personal property of his wife's family. The waiver, section 9.2 of the Agreement, stated:

> The Husband hereby waives any claim he has or may have in the future arising out of the Wife's family's real estate or other holdings including, but not limited to, the Cornfeld Family Partnerships, the Paul Koenig Note, the Chapel Trail Investment and Cambridge Asset Management, Inc.

A second waiver provision, section 19.3 of the Agreement, provided:

> Except as otherwise expressly set forth in this Agreement, the Husband and Wife each waives, renounces and releases to the other party any and all rights and claims which the Husband or Wife now has or may in the future acquire in the real or personal property or

3

estate of the other party, wheresoever situated, whether before or after the date of execution of this Agreement, by reason of (i) inheritance or descent, (ii) any decedent estate law, (iii) any other statute or custom, (iv) the marital relationship, or (v) any other reason whatsoever.

Subsequent disagreement arose between Urfirer and Leslie Cornfeld as to the interpretation of the first waiver provision. As a result, the divorce court issued two orders addressing this question.

First, in an order dated December 3, 2001 (which the parties refer to as the "Discovery Order"), the New York divorce court rejected Urfirer's attempt to obtain certain financial discovery pertaining to Cambridge Asset Management, Inc. ("Cambridge") and LJS Investors, Ltd. ("LJS"). LJS is a partnership in which Urfirer had a 33% ownership interest during his marriage. The remainder was owned by members of the Cornfeld family, with Robert Cornfeld serving as general manager and Jeffrey Cornfeld as general partner. Cambridge was 100% owned by Urfirer and managed by Robert Cornfeld. The businesses were not included among the marital assets, and were subject to the waiver provision of the settlement agreement.

Accordingly, the divorce court observed, whether Urfirer was entitled to discovery regarding these businesses "hinge[d] on the scope of the waiver," since discovery was not appropriate if Urfirer retained no interest in those businesses. Discovery Order at 2. The divorce court ultimately rejected the discovery request,

4

reasoning:

> The waiver is unequivocal and speaks not only in terms of waiver of any future rights but rights that accrued before June 1, 2001 as well. Assuming arguendo that the income distributions prior to June 1, 2001 were improper, the waiver precludes defendant from contesting such distributions. He is not entitled to the third party discovery because he has no past or future rights to the assets.

Id. at 3.

In spite of the divorce court's declaration that Urfirer had no rights to the assets of LJS and Cambridge, Urfirer never executed the documents necessary to transfer his titled interests in these and other Cornfeld family businesses (the "Cornfeld Family Holdings") to his wife. Accordingly, Leslie Cornfeld moved for partial summary judgment declaring that pursuant to the settlement agreement, Urfirer waived his rights and transferred his ownership interests in the Cornfeld Family Holdings to his wife.

Urfirer argued that the Agreement's waiver provision waived only his right to claim that the Cornfeld Family Holdings were marital property; that it did not waive any rights he had in the Cornfeld Family Holdings prior to June 1, 2001; and that he retained his ownership interest until he actually signed the documents transferring it to Leslie Cornfeld. The divorce court, in what the parties refer to as the "Title Order" of September 25, 2002, found all of these arguments "unsupportable" under "the plain language of the parties' agreement." Title Order

5

at 5. The divorce court thus held:

> Accordingly, plaintiff's motion for partial summary judgment is granted to the extent that the court declares that as of June 1, 2001, defendant has no ownership Interest in the Cornfeld Family Real Estate and Holdings, including: Cornfeld Family Partnerships, The Paul Koenig Note, The Chapel Trail Investment and Cambridge Asset Management, Inc. The court further directs that defendant execute, no later than 30 days from the date of this decision, such documents as may be required to transfer ownership of such holdings to plaintiff as of June 1, 2002. The entry of any judgment hereon, however, shall be held in abeyance pending final adjudication of the instant divorce action.

Id. at 11.

Shortly thereafter, Urfirer claims, he inadvertently obtained a copy of LJS's 2001 tax return and learned for the first time that Leslie, Robert, and Jeffrey Cornfeld had concealed from him an LJS bank account containing nearly $2 million in cash. This cash, Urfirer argues, should have been included among the marital property to be divided equally between himself and Leslie Cornfeld.

Urfirer attempted to raise this claim against Leslie Cornfeld in the divorce court, and the divorce court dismissed it without prejudice. In an order dated July 16, 2003, the divorce court stated:

> Defendant seeks to have this court 'adjust' plaintiff's equitable distribution, claiming he is entitled to compensatory and punitive damages because he waived whatever rights he may have had in plaintiff's interest in certain family owned businesses based upon plaintiff's alleged fraud. He seeks such an adjudication by motion.

6

This motion fails procedurally and must be denied.

Procedurally defendant's motion for summary adjudication on a claim of fraud is defective because there is no pleading interposed by defendant in which he alleges a cause of action for fraud against plaintiff. A fortiori, if there is no pleading, there is no joinder of issue, which is a necessary predicate to the summary adjudication defendant now seeks. CPLR §3212. Further, where there is no underlying cause of action, there is no basis for punitive damages. Collision Plan Unlimited v. Bankers Trust, 63 NY2d 827, 831 (1984). Even were a proper pleading interposed, the facts claimed arise from a private transaction, and do not rise to a high degree of moral turpitude that would otherwise implicate punitive damages. VGS, Inc. v. Lifetime Cutlery Corp., 87 AD2d 810 (2nd Dept. 1982). Finally there is no basis for summary [judgment] even with a proper pleading, because issues of fraud are almost inevitably questions of fact. Dr. Rossi v. Rubenstein, 233 AD2d 220 (1st Dept. 1996).

In view of the procedural defects, the court does not reach the issue of whether, if properly interposed, defendant even makes out a claim of fraud.

Order at 18-19.

Subsequent to this order, Urfirer brought a claim against Leslie Cornfeld in the New York divorce court alleging fraud, breach of fiduciary duty, and unjust enrichment.

Urfirer also filed the instant action against Robert and Jeffrey Cornfeld in the United States District Court for the Southern District of Florida. Count I of his federal claim alleged breach of a common law fiduciary duty, asserting that Robert Cornfeld, as managing partner of LJS, and Jeffrey Cornfeld, as general partner of

7

LJS, owed Urfirer a fiduciary duty, which they breached by concealing from him certain business transactions and the existence of a capital account from which Urfirer was entitled to withdraw funds. Count II alleged fraud by Robert Cornfeld in his negotiation of the settlement agreement with Urfirer on Leslie Cornfeld's behalf. Robert Cornfeld assertedly induced Urfirer to waive his interest in LJS by concealing material information that he had a fiduciary duty to disclose. Count III alleged that Urfirer, as a former LJS partner, had a statutory right under Florida Statutes §§ 620.143 and 620.8403 to inspect LJS's books. Count IV was an equitable demand for an accounting from LJS. Count V sought an equitable injunction compelling LJS to disclose its books and records. Count VI alleged that Urfirer, as a former Cambridge shareholder, had a statutory right under Florida Statutes §§ 607.1602, 607.1604, 620.143, and 620.8403 to inspect Cambridge's books and records. Count VII was an equitable demand for an accounting from Cambridge. Finally, Count VIII sought an equitable injunction compelling Cambridge to disclose its books and records.

The district court, in an order dated September 8, 2003, granted final summary judgment for Robert and Jeffrey Cornfeld on all of Urfirer's claims, finding them barred by collateral estoppel (or issue preclusion). Applying New York's law of collateral estoppel, the district court concluded that the divorce

court's Discovery Order and its Title Order both conclusively resolved the scope and validity of the waiver provision of the settlement agreement. Accordingly, it held, Urfirer was barred from bringing in federal court his fraud claims, which sought to relitigate the already-resolved issue of the waiver's validity.

Urfirer moved pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend the final summary judgment to reinstate Counts I and II of his complaint (the fraud and breach of fiduciary duty claims), which, he argued, were not precluded since those claims were never litigated in the divorce court. The district court, in an order dated December 15, 2003, denied this motion, clarifying that "final summary judgment was not based on a finding that a New York court previously decided the causes of action contained in Counts I and II," but rather on a finding "that all of the causes of action (including Counts I and II) contained in Urfirer's Complaint are barred by the waiver provisions contained in his June 1, 2001 agreement with Leslie Cornfeld." Order at 2-3 (citation omitted).

Urfirer appealed the district court's grant of summary judgment and its denial of the Rule 59 motion to this Court. While Urfirer's appeal was pending, the divorce court issued another order, dated April 13, 2004, dismissing Urfirer's fraud and breach of fiduciary duty claims against Leslie Cornfeld for failure to state a claim. The divorce court dismissed the claims on the grounds that (1) there

9

was "no representation by defendant, let alone a false one, or a material one, which is a necessary predicate for actual fraud," Order at 6; (2) Leslie Cornfeld, as a limited rather than a general partner of LJS, had no duty to disclose operations information; (3) the duty of loyalty between spouses was inapplicable; and (4) that "the alleged concealment was not 'material' in the context of the negotiation of a post-nuptial agreement," Order at 7.

However, the divorce court's order specifically rejected Leslie Cornfeld's argument that collateral estoppel barred litigation of Urfirer's fraud and breach of fiduciary duty claims. The divorce court explained:

> Notwithstanding that [Urfirer] failed to state any causes of action, the court otherwise rejects the argument that [the] doctrine of collateral estoppel bars his claims.
>
> In evaluating whether the doctrine of collateral estoppel applies, the court looks to see if there is an identity of issue decided in the prior action that is decisive of the present action and whether defendant had a full and fair opportunity to contest the decision now said to be controlling. Beuchel v. Bain, 97 NY2d 295 cert den 535 US 1096 (2002). Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity. Beuchel v. Bain, supra.
>
> [Urfirer] contends that no court has expressly addressed his fraud claims, his claims of unjust enrichment, or breach of fiduciary duty. Further, he argues that he is not precluded from seeking relief other than recision of their post-nuptial agreement. The court agrees. No order of this court or those of the Appellate Division of this state

10

reached the fraud and related issues. The orders expressly dealing with the waiver only interpreted its scope. Indeed the court could not have reached such issues until the instant pleading was interposed. CPLR §3212[a]; <u>Valentine Transit v. Kernizan</u>, 191 AD2d 159 (1st Dept. 1993). Nor can this court give the dismissal of the Florida action collateral estoppel effect because it did so based, in turn, on its holding that this court's orders had a collateral estoppel effect. Since this court does not believe the New York orders collaterally estop defendant, it likewise holds that the Florida orders have no preclusive effect.

Order at 9-11.

Urfirer moved this Court to supplement the record in his case against Robert and Jeffrey Cornfeld with the divorce court's April 13, 2004 order. On June 2, 2004, the Court denied Urfirer's motion to supplement the record without prejudice to Urfirer's right to file a Rule 60 motion for relief from judgment in the district court. We also stayed the appeal pending the district court's resolution of the Rule 60 motion, which Urfirer filed on June 15, 2004. Urfirer moved the district court for reconsideration pursuant to Rule 60(b)(5), which authorizes a court to grant relief from a judgment when "a prior judgment upon which it is based has been reversed or otherwise vacated," Fed. R. Civ. P. 60(b)(5), and Rule 60(b)(6), which authorizes relief for "any other reason justifying relief from operation of the judgment," Fed. R. Civ. P. 60(b)(6).

In an order dated August 12, 2004, the district court denied Urfirer's motion.

11

The district court reasoned that even if the divorce court's latest order meant that the district court's collateral estoppel ruling was incorrect, Urfirer failed to demonstrate that the equities of the case warranted vacating the prior order. Vacating that judgment would be "an empty exercise," Order at 5, 6, the district court reasoned, since the divorce court's latest order "reaffirms that the scope of the waiver provisions has been conclusively determined and holds that those provisions are valid and free from fraud or breach of duty by Leslie Cornfeld, the only other party to the 2001 agreement containing the waiver provisions. As held in the prior Orders of this Court, all of the causes of action contained in Urfirer's Complaint are barred pursuant to Urfirer's waiver of those claims." Order at 5-6 (citation omitted). The district court apparently concluded that even if the divorce court's earlier orders did not have a collateral estoppel effect on Urfirer's fraud claims, the divorce court's latest order dismissing Urfirer's fraud claims against Leslie Cornfeld did have such an effect, barring his fraud claims against Robert and Jeffrey Cornfeld. See id. at 6 ("[T]his Court will not engage in an empty exercise by vacating its prior decisions only to apply collateral estoppel based on the 2004 NY Order rejecting Urfirer's latest attempt to invalidate the waiver provisions.").

In addition, the district court reasoned, the divorce court's "holding seems

untenable in that it suggests that the prior New York court holdings regarding the scope of the waiver provisions did not necessarily find those provisions valid nor did the protracted litigation regarding the waiver provisions' scope require Urfirer also to challenge the validity of those provisions." Id. at 6. Accordingly, the district court denied Urfirer's motion for relief from judgment.

Urfirer appealed from the district court's denial of his Rule 60 motion, and we, sua sponte, consolidated that appeal with Urfirer's appeal from the grant of final summary judgment for Robert and Jeffrey Cornfeld. Accordingly, three district court orders are now before us: the order granting final summary judgment; the order denying Urfirer's Rule 59(e) motion to amend the summary judgment; and the order denying Urfirer's Rule 60 motion for relief from judgment.

## II.

"We review a summary judgment ruling de novo, viewing the materials presented and drawing all factual inferences in a light most favorable to the non-moving party." Bochese v. Town of Ponce Inlet, No. 04-11542, 2005 WL 779314, at *8 (11th Cir. Apr. 7, 2005). "Summary judgment is appropriate when 'there is no genuine issue as to any material fact' and 'the moving party is entitled to a judgment as a matter of law.' The movant bears the burden of demonstrating the satisfaction of this standard, by presenting 'pleadings, depositions, answers to

13

interrogatories, and admissions on file, together with the affidavits, if any' that establish the absence of any genuine, material factual dispute." Id. (citation omitted) (quoting Fed. R. Civ. P. 56(c)).

In this Circuit, it is "well established law that a federal court cannot give preclusive effect to a state court order, in subsequent litigation, without determining whether the state from which the order was rendered would give that order preclusive effect through the operation of the rendering state's law of res judicata and collateral estoppel." Blanchard v. DeLoache-Powers, 286 F.3d 1281, 1289 (11th Cir. 2002) (citing Shields v. BellSouth Adver. & Publ'g Co., 228 F.3d 1284, 1288 (11th Cir. 2000)); see also 28 U.S.C. § 1738 ("Such Acts, records and judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."). Accordingly, the question here is whether a New York court would find Urfirer's claims precluded by any or all of the divorce court's orders.

Principles of issue preclusion, under New York law, bar "re-litigation by parties and their privies of any matters that were necessarily decided in a prior action." Blanchard, 286 F.3d at 1289 (citing Thomas v. New York City, 814 F. Supp. 1139, 1148 (E.D.N.Y. 1993)). "To establish collateral estoppel under New

14

York law, two requirements must be satisfied: (1) 'the party seeking the benefit of collateral estoppel must prove that the identical issue was necessarily decided in the prior action and is decisive in the present action;' and (2) 'the party to be precluded from re-litigating . . . must have had a full and fair opportunity to contest the prior determination.'" Id. (quoting D'Arata v. New York Cent. Mut. Fire Ins. Co., 564 N.E. 2d 634, 636 (N.Y. 1990)).

As the New York Court of Appeals has explained:

The equitable doctrine of collateral estoppel is grounded in the facts and realities of a particular litigation, rather than rigid rules. Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity (Ryan v New York Tel. Co., 62 NY2d 494, 500 [1984]). The policies underlying its application are avoiding relitigation of a decided issue and the possibility of an inconsistent result (D'Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d 659, 664 [1990]).

Two requirements must be met before collateral estoppel can be invoked. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and there must have been a full and fair opportunity to contest the decision now said to be controlling (see, Gilberg v Barbieri, 53 NY2d 285, 291 [1981]). The litigant seeking the benefit of collateral estoppel must demonstrate that the decisive issue was necessarily decided in the prior action against a party, or one in privity with a party (see, id.). The party to be precluded from relitigating the issue bears the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination. The doctrine, however, is a flexible one, and the enumeration of these elements is intended merely as a framework, not a substitute, for case-by-case analysis of

15

the facts and realities. "In the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of . . . fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results. No rigid rules are possible, because even these factors may vary in relative importance depending on the nature of the proceedings . . ." (see, Staatsburg Water Co. v Staatsburg Fire Dist., 72 NY2d 147, 153 [1988] [citations omitted]).

Buechel v. Bain, 97 N.Y. 2d 295, 303-04 (2001).[1]

---

[1] Collateral estoppel -- or issue preclusion -- is the only preclusion doctrine at issue in this case. The distinct but related principle of res judicata -- or claim preclusion -- is that "if the later litigation arises from the same cause of action, then the judgment bars litigation not only of every matter which was actually offered and received to sustain the demand, but also of every claim which might have been presented." In re Bateman, 331 F.3d 821, 830 (11th Cir. 2003) (citation and internal quotation marks omitted). The New York Court of Appeals has explained the difference between claim preclusion and issue preclusion in these terms:

"[C]laim preclusion" . . . is intended to refer to situations in which one of the parties to a prior action or proceeding is foreclosed in a second action or proceeding between the same parties from relitigating a claim or cause of action (not infrequently involving several discrete issues) which was the subject matter of the prior action or proceeding. "Issue preclusion" refers to discrete issues of fact or law rather than to claims or causes of action, and may arise in either of two situations: where the parties are the same and one is barred from relitigating an issue which was adjudicated in the prior action or proceeding between them; or where the parties are not the same but nonetheless one of the parties to the subsequent action or proceedings is foreclosed in the second from relitigating an issue which was determined in the first action or proceeding.

Am. Ins. Co. v. Messinger, 371 N.E. 2d 798, 802 n.2 (N.Y. 1977).

The doctrine of claim preclusion is inapplicable here -- and thus has gone unmentioned by the district court or the parties -- for two reasons: the parties are different and the causes of action are different. Res judicata "will bar a subsequent action if: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the prior and present causes of action are the same." Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1187 (11th Cir. 2003) (citation and internal quotation marks omitted). Although the first two conditions are satisfied, the third and fourth are not. Robert and Jeffrey Cornfeld were not parties to the divorce proceedings. Furthermore, Urfirer's fraud and breach of fiduciary duty claims are not the same as the cause of action in the divorce proceedings,

Applying New York's law of collateral estoppel, we consider whether any order of the divorce court precludes Urfirer from bringing the instant fraud and breach of fiduciary duty claims against Robert and Jeffrey Cornfeld, or from seeking statutory and equitable disclosure of Cambridge and LJS books and records.

A.

Collateral estoppel is no bar to Urfirer's fraud and breach of fiduciary duty claims -- Counts I and II of his complaint -- because the issues underlying these claims were not "necessarily decided" in any divorce court proceeding.

To have been "necessarily decided," an issue must have been "material to the first action or proceeding and essential to the decision rendered therein." Ryan v. New York Tel. Co., 62 N.Y. 2d 494, 500 (1984). An issue is "necessarily decided" only if it was "actually before the judge and open to determination when he rendered his decision and necessary to support the result he ultimately reached." Whitney Holdings, Ltd. v. Givotovsky, 988 F. Supp. 732, 737 (S.D.N.Y. 1997). In other words, the collateral estoppel applies only "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first

---

or even in Urfirer's fraud suit against Leslie Cornfeld. That suit alleged fraudulent conduct on the part of Leslie Cornfeld, and thus constitutes a different cause of action from Urfirer's suit alleging fraudulent conduct on the part of Robert and Jeffrey Cornfeld.

17

action." Parker v. Blauvelt Volunteer Fire Co., 712 N.E. 2d 647, 651 (N.Y. 1999); see also, e.g., NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd., 262 F. Supp. 2d 134, 143 (S.D.N.Y. 2003).

Urfirer's fraud claims do not raise issues that were necessarily decided by the divorce court. The district court reasoned that the divorce court's Discovery Order and Title Order necessarily decided the "scope and validity of the waiver," see e.g., Summary Judgment Order at 11, thereby precluding Urfirer from arguing that the waiver was fraudulently obtained. We disagree for several reasons.

First, after carefully reviewing the divorce court's orders, we are convinced that the divorce court passed only on the scope -- not the validity -- of the waiver provision, and thus no "identical" issue was "raised, necessarily decided and material" in the prior proceedings. Parker, 712 N.E. 2d at 651. The divorce court's Discovery Order addressed only the question of whether, in light of the waiver, Urfirer retained any ownership interest in any of the Cornfeld Family Holdings. Accordingly, the divorce court stated, "[t]he parties' dispute hinge[d] on the scope of the waiver." Discovery Order at 2 (emphasis added). The divorce court held the waiver to be total and "unequivocal," id. at 3, but never passed on its validity. The Title Order, similarly, amounted only to a declaration that based on "the plain language of the parties' agreement," Urfirer had waived "any claims and

18

interest he had" in the Cornfeld Family Holdings. Title Order at 5.

The district court, in its summary judgment order, bases its conclusion that the fraud and fiduciary duty claims were necessarily decided on a brief discussion in the Title Order. In that order, the divorce court observed:

> Defendant raises a host of collateral issues, <u>which have no bearing on the outcome of this motion</u>. They are specifically addressed below:
> . . . .
> [D]efendant raises speculative issues about whether he was defrauded when making the June 1, 2001 agreement, and/or whether third parties were defrauded by Cambridge. The papers contain veiled threats of multiple separate actions that will be brought sometime in the future. <u>Right now</u> the June 1, 2001 agreement stands as an enforceable contract. <u>There are no actions pending</u> in which the defendant seeks to set it aside. Moreover, this court seriously questions whether defendant's claims, that he was unaware of certain acts and information before he signed the June 1, 2001 agreement, are sufficient to set it aside.[5] Even more speculative is defendant's claim that he might at sometime be sued by third parties on account of his prior ownership of Cambridge. Apparently these unnamed third parties have not yet sued or even threatened to sue defendant. If defendant is sued, his rights of indemnification are still separate from the rights of ownership that he claims in the Cornfeld family holdings.
>
> Footnote 5: Defendant's factual claims of ignorance are disputed by Plaintiff. The Court takes no position on this factual dispute.

Title Order at 9-10 (emphasis added) (citations omitted).

This discussion only reinforces the conclusion that the fraud and fiduciary duty claims were never properly before the divorce court, were not decided by the

divorce court, and were not necessary or material to anything the divorce court did decide. The divorce court's statements that the waiver is enforceable "right now," that Urfirer had not brought an action "to set it aside," and that the "speculative" fraud issue "ha[d] no bearing on the outcome of this motion," make plain that Urfirer's fraud and fiduciary duty claims were not "necessarily decided" by the divorce court.

Additionally, although the district court did not discuss it, the divorce court's July 16, 2003 order, addressing Urfirer's initial attempt to raise his fraud allegations in the divorce court, further illustrates that the divorce court explicitly left all fraud questions undecided. In that order, the divorce court declined to address the merits of Urfirer's fraud claims, finding them not properly before the court. The order states: "Procedurally defendant's motion for summary adjudication on a claim of fraud is defective because there is no pleading interposed by defendant in which he alleges a cause of action for fraud against plaintiff . . . . In view of the procedural defects, the court does not reach the issue of whether, if properly interposed, defendant even makes out a claim of fraud." Order at 18-19. In light of these statements making clear that Urfirer's fraud claims were not properly before it, the divorce court cannot be said to have "necessarily decided" those claims.

The only divorce court order to decide <u>any</u> fraud claim brought by Urfirer is the divorce court's most recent order, dismissing Urfirer's fraud claims against <u>Leslie Cornfeld</u> for failure to state a claim. Notably, the Cornfelds do not argue that this order has a preclusive effect on Urfirer's fraud claims against <u>Robert and Jeffrey Cornfeld</u>. The district court, however, suggested that the order had such an effect, declaring, "this Court will not engage in an empty exercise by vacating its prior decisions only to apply collateral estoppel based on the 2004 NY Order rejecting Urfirer's latest attempt to invalidate the waiver provisions." Order at 6.

After careful review of the latest divorce court order, we are convinced that it has no collateral estoppel effect on Urfirer's fraud and breach of fiduciary duty claims against Robert and Jeffrey Cornfeld, since the divorce court did not "necessarily decide" any issue material to these claims. The divorce court ruled only on whether <u>Leslie Cornfeld</u> defrauded or breached a fiduciary duty she owed Urfirer. The grounds on which the divorce court dismissed the claims against Leslie Cornfeld included (1) the fact that the duty of loyalty between spouses was inapplicable; (2) that there was "no representation by [Leslie Cornfeld], let alone a false one, or a material one, which is a necessary predicate for actual fraud," Order at 6; (3) that Leslie Cornfeld was a limited rather than a general partner of LJS and therefore owed no duty to disclose operations information; and (4) that "the alleged

21

concealment was not 'material' in the context of the negotiation of a post-nuptial agreement," Order at 7.

The first ground is irrelevant to Urfirer's claims against Robert and Jeffrey Cornfeld, since no spousal relationship existed among those parties. As to the second ground, the fact that Leslie Cornfeld made no false representation to Urfirer regarding LJS does not mean that the same is true of Robert and Jeffrey Cornfeld. This is a factual question not previously addressed by the divorce court. As to the third ground, Robert and Jeffrey Cornfeld are general partners of LJS, and therefore the duties they owed Urfirer plainly differ from the duties Leslie Cornfeld owed him.

The fourth ground is the only one that may have some bearing on Urfirer's action against Robert and Jeffrey Cornfeld. The divorce court reasoned that the allegedly concealed transactions -- which consisted of the sales of LJS property and deposit of the proceeds into LJS's capital account -- were "not 'material' in the context of the negotiation of the post-nuptial agreement" since "[w]hether LJS held assets as real estate or in a cash account, it still had the same value at the time the waiver was agreed to. Thus the change in value of the waiver due to the undisclosed sale was zero." Order at 7-8. However, this determination by the divorce court does not have a collateral estoppel effect on Urfirer's fraud claims

22

against Robert and Jeffrey Cornfeld. Because the claims against Robert and Jeffrey Cornfeld are not clearly limited to precisely the same transactions at issue in the case against Leslie Cornfeld, and because Urfirer alleges that the fiduciary duty Robert and Jeffrey Cornfeld owed him arose out of their positions as general partners of LJS -- a context broader than "the negotiation of the post-nuptial agreement" -- the divorce court did not "necessarily decide" that anything Robert or Jeffrey Cornfeld may have improperly concealed from Urfirer was immaterial.

The effect that the latest order of the divorce court does have is to clarify that under New York law, neither the Discovery Order nor the Title Order has any collateral estoppel effect on Urfirer's fraud and fiduciary duty claims. In fact, the divorce court stated unambiguously that these claims were never "necessarily decided" by any New York court, declaring: "No order of this court or those of the Appellate Division of this state reached the fraud and related issues." Order at 9. Its prior "orders expressly dealing with the waiver only interpreted its scope." Id. at 9-10. "Indeed the court could not have reached such issues until the instant pleading was interposed," id. at 10, because the fraud allegations were never properly before the divorce court. In addition, the divorce court noted that the relief sought was different, agreeing with Urfirer that he was "not precluded from seeking relief other than recision of their post-nuptial agreement." Id. at 9. This

23

discussion explicitly rejects the outcome of the district court action (which it refers to as "the Florida action"), making plain that the district court's conclusion that "the New York orders collaterally estop defendant" was erroneous under New York law. See id. at 10.

Moreover, the divorce court's rulings in the divorce dispute between Urfirer and Leslie Cornfeld cannot fairly be held to preclude Urfirer's claims for damages against Robert and Jeffrey Cornfeld since the Cornfeld defendants were never parties to those divorce proceedings or to the settlement agreement and could not have been sued for damages in that proceeding. As nonparties, the issue of whether the Cornfelds may be liable for damages arising out a breach of fiduciary duty or fraudulent misrepresentation to Urfirer was not "actually before the judge and open to determination when [s]he rendered [her] decision," nor was such a determination "necessary to support the result [s]he ultimately reached" in ruling on the scope of the waiver provision of Urfirer's settlement agreement with Leslie Cornfeld. Whitney Holdings, 988 F. Supp. at 737.

The Cornfelds argue, however, that the fact Urfirer is seeking damages rather than rescission of the Agreement demonstrates that he has "ratified" the waiver provision and thus can no longer challenge it on the ground that it was fraudulently obtained. They quote Urfirer's Reply Affidavit, in which he stated: "I

24

am not seeking to rescind the June 1, 2001 Agreement. I am not seeking to vitiate my agreement to waive my interest in the Cornfeld Family Holdings. I am narrowly tailoring the relief I am seeking to simply undo the fraud, and include the cash in the LJS Account as of June 1, 2001 in the marital pot for ultimate equitable distribution." This statement is borne out by Urfirer's complaint, in which he requests only compensatory and punitive damages, not rescission of the Agreement.

However, under New York law, "a plaintiff is not precluded from bringing an action for damages for deceit although he or she has affirmed the contract subsequent to discovering the fraud. . . . [A]n affirmance of the contract is consistent with such action for damages." 60A N.Y. Jur. 2d Fraud and Deceit § 217. "The law is well settled in New York that one who is induced by fraud to enter into a contract 'may pursue one of three remedies: He may rescind the contract absolutely, and sue in an action at law to recover the consideration parted with upon the fraudulent contract. . . . He may also bring an action in equity to rescind the contract, and in that action have full relief. . . . Lastly, <u>he may retain what he has received, and bring an action at law to recover the damages sustained</u>.'" <u>DuPont v. Perot</u>, 59 F.R.D. 404, 410 (S.D.N.Y. 1973) (emphasis in original) (quoting <u>Goldsmith v. Nat'l Container Corp.</u>, 40 N.E. 2d 242, 244 (N.Y.

25

1942)).  Accordingly, Urfirer's decision to affirm the Agreement, including the waiver provision, and seek damages does not bar his fraud claims against Robert and Jeffrey Cornfeld.

The Cornfelds also argue that the waiver provision of the settlement agreement -- which "waives any claim [Urfirer] has or may have in the future arising out of the Wife's family's real estate or other holdings" -- constitutes a waiver of Urfirer's right to claim that he was fraudulently induced to sign the Agreement.  The district court apparently adopted this view in its order denying Urfirer's Rule 59 motion to amend the final summary judgment to reinstate Counts I and II of his complaint.  In that order, the district court explained that "final summary judgment was not based on a finding that a New York court previously decided the causes of action contained in Counts I and II."  Order at 2.  Instead, the district court suggested, these claims were "barred by the waiver provision[]" itself.  Id. at 3.

Under New York law, this is not the case.  A waiver or release of rights does not preclude a party from claiming fraud in the inducement of the very instrument by which the party waived his rights.  As the Court of Appeals has explained:

> [T]here is no authority that we are required to follow in support of the proposition that a party who has perpetrated a fraud upon his neighbor may nevertheless contract with him, in the very instrument by means

26

of which it was perpetrated, for immunity against its consequences, close his mouth from complaining of it, and bind him never to seek redress. Public policy and morality are both ignored if such an agreement can be given effect in a court of justice. The maxim that fraud vitiates every transaction would no longer be the rule, but the exception. It could be applied then only in such case as the guilty party neglected to protect himself from his fraud by means of such a stipulation. Such a principle would in a short time break down every barrier which the law has erected against fraudulent dealing.

Sabo v. Delman, 143 N.E. 3d 906, 909 (N.Y. 1957) (citation and internal quotation marks omitted).

Accordingly, the Appellate Division has similarly held:

[D]efenses based upon allegations of fraud may not be waived. This is because a written waiver in any form cannot operate to shield a party from his own fraud. For the courts to give effect to such a clause would be violative of both public policy and morality, since an ultimate finding of fraud must of necessity vitiate the contract relied upon.

Sterling Nat'l Bank & Trust Co. of New York v. Giannetti, 384 N.Y.S. 2d 176, 176 (App. Div. 1976).

Numerous other cases have reaffirmed the basic principle that a general contractual waiver of rights does not waive the right to claim fraudulent inducement. See, e.g., Bloss v. Va'ad Harabonim of Riverdale, 610 N.Y.S. 2d 197, 198 (App. Div. 1994) ("A release, even though properly executed, may, nonetheless, be void. Where fraud or duress in the procurement of a release is

27

alleged, a motion to dismiss should be denied." (citation omitted)); <u>Ferry v. Poughkeepsie Galleria Co.</u>, 602 N.Y.S. 2d 267, 268 (App. Div. 1993) ("Although plaintiffs' commercial lease contained a provision waiving the right to trial by jury of any action arising out of that lease, that waiver does not apply to plaintiffs' causes of action alleging that plaintiff Ferry was induced to enter into the lease agreement by defendant's fraudulent misrepresentations."); <u>FDIC v. Frank L. Marino Corp.</u>, 425 N.Y.S.2d 34, 35 (App. Div. 1980) ("A waiver of the right to assert a setoff or counterclaim is not against public policy and has been enforced by this court. However, such a waiver will not be enforced so as to bar a viable setoff or counterclaim sounding in fraud." (citation omitted)); <u>Brooklyn Nat'l Bank of New York v. Werblow</u>, 263 A.D. 884, 884-85 (N.Y. App. Div. 1942) ("Obviously the setting up of the compromise agreement as a bar to the first cause of action does not avoid plaintiff's right to recover, since plaintiff's claim is for damages sustained by reason of defendant's fraud in inducing plaintiff to execute the compromise agreement and necessarily is predicated upon the fact that the compromise agreement and all its provisions are valid and binding. . . . This release does not purport to release the cause of action averred in the complaint. On the contrary, it constitutes a part of the very foundation of the cause of action alleged." (citation and internal quotation marks omitted)); <u>Cucchiaro v. Cucchiaro</u>, 627

28

N.Y.S. 2d 224, 227-28 (Sup. Ct. 1995) (holding that "plaintiff's waiver of equitable distribution is binding only to the extent that the Court finds that the separation agreement was not fraudulently induced"); Nat'l Westminster Bank v. Ross, 676 F. Supp. 48, 54 (S.D.N.Y. 1987) (holding that defendant's allegation of fraud "supersedes his waiver of the right to assert counterclaims").[2]

Because it is so well established under New York law that a general contractual waiver of rights is void if induced by fraud, Urfirer's waiver of "any claims" to the Cornfeld Family Holdings does not preclude him from contesting that provision as having been fraudulently obtained.

Accordingly, since Urfirer has not waived his right to allege fraud in the inducement, and because no prior order of the divorce court "necessarily decided" Urfirer's fraud and breach of fiduciary duty claims against Robert and Jeffrey Cornfeld, the district court's conclusion that collateral estoppel barred Counts I and

---

[2]    See also, e.g., 19A N.Y. Jur. 2d Compromise, Accord and Release § 103 ("A releasor is entitled to be relieved from the consequences of the release obtained by fraud, misrepresentation, or deceit.  A release obtained through fraud may on that basis be rendered invalid." (footnotes omitted)); 60A N.Y. Jur. 2d Fraud and Deceit § 226 ("While a party who, after having been defrauded, compromises the matter in relation to which fraud was committed with full knowledge the fraud will be concluded by a valid compromise or settlement, he or she does have the right to relief from the fraud, notwithstanding a settlement, where it appears that he or she entered into the settlement without knowledge of the fraud." (footnotes omitted)); 48 N.Y. Jur. Domestic Relations § 2230 ("A judgment of divorce which has been obtained by fraud or collusion of the parties thereto will be vacated and set aside upon motion, since it is the duty of the Court to set aside the judgment under such circumstances." (footnotes omitted)).

II of Urfirer's complaint was erroneous.[3]  We therefore reverse and remand as to

Counts I and II.

B.

We consider next whether collateral estoppel bars any of Urfirer's remaining

claims, which assert statutory and equitable rights to disclosure of LJS and

Cambridge financial records.

Four of Urfirer's claims against the Cornfelds seek such disclosure based on

principles of equity.  Counts IV and VII seek accountings of LJS and Cambridge,

respectively.  Counts V and VIII seek injunctions compelling LJS and Cambridge,

respectively, to disclose their books and records to Urfirer.  The district court

dismissed these claims along with Urfirer's fraud and fiduciary duty claims --

without distinguishing among them -- as barred by collateral estoppel.  However,

because no prior order of the divorce court necessarily decided whether Urfirer is

entitled to the requested disclosure, the district court's dismissal of Counts IV, V,

VII, and VIII was erroneous.

The only divorce court order to address any disclosure issue is the Discovery

Order.  In that order, the divorce court denied Urfirer's request for discovery of

---

[3]     Because we hold that these claims were not necessarily decided in any prior proceeding, we need not and do not consider the second prong of the collateral estoppel analysis -- whether Urfirer had a full and fair opportunity to contest the prior rulings.

financial information pertaining to LJS and Cambridge on the ground that he waived any interest he might have had in these businesses, and thus such discovery would amount to nothing more than a "fishing expedition." Discovery Order at 3. However, the fact that the divorce court denied Urfirer's discovery request in the context of the divorce proceedings does not now bar Urfirer from obtaining discovery pertaining to his fraud and fiduciary duty claims against Robert and Jeffrey Cornfeld. The divorce court's discovery ruling has no collateral estoppel effect on Urfirer's current requests, since the divorce court did not and could not necessarily decide that such discovery was improper in the context of the claims Urfirer is presently asserting.

We therefore reverse the district court's grant of summary judgment on Urfirer's equitable disclosure claims -- Counts IV, V, VII, and VIII of his complaint -- and remand for the district court to consider whether Urfirer's requests are appropriate in the context of his fraud and breach of fiduciary duty claims.

Count III of Urfirer's complaint asserts that under Florida law, Urfirer has a statutory right as a former partner to inspect the books and records of LJS. Section 620.8403(2) of the Florida Statutes provides, in pertinent part:

The partnership shall provide former partners and their agents and

31

> attorneys access to books and records pertaining to the period during which they were partners.

Fla. Stat. § 620.8403(2). Although this language appears unambiguous, the Cornfelds argue that this provision applies only to general partners, not to limited partners like Urfirer. Whether this is the case is an issue for the district court to address on remand. The divorce court certainly never addressed the issue of whether Urfirer has a statutory right under Florida law to inspect LJS's records, and thus Urfirer is not collaterally estopped from bringing this claim in the district court.

We therefore reverse the district court's grant of summary judgment as to Count III of Urfirer's complaint and remand for the district court to determine whether Urfirer is entitled to inspect LJS's records under § 620.8403(2).

Finally, Count VI of Urfirer's complaint asserts that Florida law gives Urfirer the right to inspect Cambridge's books and records. Urfirer concedes that Florida law does not guarantee him access to these records as a former shareholder, since Cambridge is a corporation rather than a partnership, and Florida law guarantees access to corporate records only to present shareholders. See Fla. Stat. §§ 607.1602(1) ("A shareholder of a corporation is entitled to inspect and copy, during regular business hours at the corporation's principal office, any of the

32

records of the corporation described in s. 607.1601(5) . . . ."); 607.1602(2) ("A shareholder of a corporation is entitled to inspect and copy, during regular business hours at a reasonable location specified by the corporation, any of the following records of the corporation if the shareholder meets the requirements of subsection (3) . . . .").

However, Urfirer argues that he is entitled to the same inspection rights as a present shareholder since he made his statutory demand for inspection while he was still nominally a shareholder -- that is, before he transferred title of his shares to Leslie Cornfeld, as required by the settlement agreement. He notes that Florida law defines a "shareholder" as "a holder of record of shares in a corporation or the beneficial owner of shares." Fla. Stat. § 607.01401(24) (emphasis added). Before he fulfilled his obligation to transfer title to Leslie Cornfeld, Urfirer argues, he was a "holder of record" of Cambridge shares.

We are unpersuaded, since the divorce court's Title Order held that Urfirer retained no ownership rights in the Cambridge stock as of June 1, 2001 (the date the settlement agreement was signed) in spite of his failure to promptly fulfill his obligation to transfer title of the shares to Leslie Cornfeld. Although Urfirer improperly retained title to the Cambridge shares, the divorce court held that he waived his right, under the settlement agreement, to raise any claims that this status

33

as nominal titleholder might otherwise have conferred on him. See Title Order at 4-6. Thus, the divorce court necessarily decided that Urfirer maintained no rights as a holder of Cambridge shares on January 22, 2003, when he filed his complaint seeking inspection of Cambridge's books. Because Urfirer is precluded from asserting any ownership rights in any Cambridge stock at the time he sought inspection, he is collaterally estopped from claiming a statutory entitlement to inspect Cambridge's books.

Urfirer further argues that even if he does not qualify as a shareholder, a court nevertheless has discretion to grant him inspection rights. He cites Florida Statutes § 607.1602, which provides that shareholders are entitled to inspect corporate records, and notes that "[t]his section does not affect . . . [t]he power of a court, independently of this act, to compel the production of corporate records for examination." Fla. Stat. § 607.1602(5)(b). Section 607.1602(5)(b), however, merely reiterates that a court has the equitable power to grant nonshareholders access to corporate records as it sees fit; it does not create a statutory right of inspection or grant courts any new statutory authority to authorize inspections by nonshareholders. Urfirer is not barred from asking the district court to exercise its equitable power to grant him access to Cambridge's books and records; however,

this is not a statutory claim.[4]

We therefore affirm the district court's grant of summary judgment for the Cornfelds as to Count VI of Urfirer's complaint because collateral estoppel bars that claim.

**III.**

Since Count VI of Urfirer's complaint is the only one of his claims barred by collateral estoppel, we affirm the district court's grant of summary judgment as to Count VI and reverse as to the others -- Counts I-V, VII, and VIII. Accordingly, Urfirer's appeals from the district court's denial of his Rule 59 motion to amend the final summary judgment and his Rule 60 motion for relief from judgment are now moot.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

---

[4] The Cornfelds argue that even shareholders are entitled to inspect records only in "good faith" and for a "proper purpose," see Fla. Stat. § 607.1602(3), and that Urfirer has shown neither. These are issues for the district court to consider on remand in determining whether to exercise its equitable discretion to grant Urfirer access to Cambridge's books and records.