[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12981
_____

D.C. Docket No. 2:16-cv-01340-VEH

GETA BARR,

Plaintiff - Appellant,

versus

FLORENCE JOHNSON,
TRINA PAULDING,
CITY OF CENTER POINT,
THOMAS HENDERSON,
JOHN WATKINS,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(June 6, 2019)

Before ROSENBAUM, BRANCH, and DUBINA, Circuit Judges.

PER CURIAM:

Plaintiff/Appellant Geta Barr ("Barr"), a small business owner, sues a host of local government officials along with the City of Center Point, Alabama ("the City"), advancing procedural due process claims relating to their involvement in the sudden closure of her businesses.  The district court entered summary judgment for the defendants, finding that Barr was untimely in raising her claims.  After review, we share the district court's sentiment that Barr could have more effectively advanced her arguments earlier in the proceedings; however, we conclude that she stated a claim for a predeprivation due process violation sufficient to preserve the issue for appeal and that it was error for the district court to grant summary judgment on the merits of her procedural due process claim.  Accordingly, we reverse and remand.

## I.

Barr is a Jamaican immigrant who currently lives in Birmingham, Alabama, and works as a cosmetologist, a barber, and an income tax preparer.  At the time this conflict began, she operated 2 storefronts: At 1849 Center Point Parkway, she operated a cosmetology salon, and nearby at 1687 Center Point Parkway, she operated a barbershop (henceforth referred to as "1849" and "1687").  It appears

2

that she also ran her tax service, seasonally, from the 1849 location, although the tax service is not relevant to this appeal.  All three of these services operated under the same roof at 1849 from 2008–2014.  When Barr split the locations, she determined that she did not need a license from the Jefferson County Barber Commission ("JCBC") at 1849, and she did not need a license from the Alabama Board of Cosmetology at 1687.  Shortly thereafter, Barr attested that JCBC inspections at 1687 became very frequent, beginning for our purposes on July 25, 2014, when Inspector Kay Wallace of the JCBC arrived to inspect 1687.  This was followed by another inspection of 1687 by JCBC Inspector and co-defendant Trina Paulding on August 19, 2014, while Barr was out of state.  Paulding found a student barber working without a required supervisor and issued Barr a $50 citation.

Two days later, again with Barr absent, Wallace returned for an inspection and found another unlicensed individual braiding a client's hair.  Four days after that, on August 25, Paulding returned to 1687 and issued Barr a written summons to appear before the JCBC the following morning.  She complied and requested a postponement to later appear with her attorney.  However, later that day, city officials and sheriff's deputies arrived at 1687, ordered everyone out, and chained the business doors shut. They did the same thing at 1849.  This was the first of

3

three such closures to follow.  Importantly, the relevant state statute required that the JCBC, when considering a license revocation, hold a hearing and provide the licensee with written notice at least 20 days prior to a hearing.  ALA. CODE § 45-37-40.04(d).  Additionally, the JCBC apparently lacked authority to revoke her license without a vote from the City Council.

Barr and her counsel requested an emergency meeting of the JCBC, which they held on September 4, and the meeting resulted in the reopening of her businesses after Barr paid a $250 fine.  On October 9, Barr and her lawyer appeared before the City Council regarding her business license.  They discussed a variety of matters, including signage issues at her businesses, compliance with her licenses, and her financial records.  The City Council gave her a new compliance deadline of October 17.  On that day, after Barr failed to produce all requested records, city officials returned and put cease-and-desist notices on the doors of both locations, and also chain-locked 1849.  At that point, the City Council had passed no new resolutions either finding Barr noncompliant or officially shuttering her businesses.  Additionally, she applied for, and received, two business licenses from the City of Center Point to operate the barber/cosmetology shops at both the 1849 and 1687 locations.  Those licenses were due to expire on December 31, 2014, but did not affect her tax business.  The City Council also passed a resolution

setting a new deadline of October 31 for Barr to present the requested documentation, stating that revocation would automatically follow if she failed to comply. Thereafter, she reopened her businesses.

Apparently, Barr produced all records but one by October 31, at which point the City executed the third shutdown of her businesses. Sometime prior to November 8, the doors were unlocked. The apparent victory was short-lived, however, as her landlord again locked the doors to 1687 on either November 9 or November 21. Thinking she would be unable to ever re-open her businesses in Center Point, Barr applied for a new license with the JCBC to open a new shop in nearby Roebuck. The JCBC granted this application, but refused to grant her a journey barber license that would allow her to supervise student barbers.

In July 2016, Barr filed suit in Jefferson County state court, and the defendants removed the case to the Northern District of Alabama based on federal question jurisdiction. The district court issued its first substantive memorandum order on April 25, 2017, granting a partial motion to dismiss certain federal law claims and dismissing the JCBC as a party to the litigation. On May 15, 2018, the district court dispensed with the rest of the case. It partially granted the defendants' motion to strike evidentiary material, granted summary judgment to all defendants on remaining federal claims, dismissed a state law claim with Barr's

5

agreement, and remanded the rest of the state law claims to Jefferson County circuit court, along with Barr's motion to strike affirmative defenses, for its consideration. The district court subsequently denied Barr's Rule 59(e) motion to alter or amend the judgment on June 21, 2018.

## II.

A district court's grant of summary judgment is reviewed *de novo*. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). Decisions to alter or amend judgments, on the other hand, are committed to the sound discretion of the district court. Thus, we review such denials under an abuse of discretion standard. *Drago v. Jenne*, 453 F.3d 1301, 1305 (11th Cir. 2006). We review these with one caveat: "A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quoting *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005)).

## III.

A. *Procedural due process*

On appeal, Barr argues that the district court wrongfully applied the Eleventh Circuit's holding in our seminal due process case of *McKinney v. Pate* in

6

finding that the state satisfied its due process obligations by making a postdeprivation remedy available to Barr in the form of judicial review in the state court system.  20 F.3d 1550 (11th Cir. 1994) (en banc).  Generally speaking, procedural due process requires that the state give the individual notice and an opportunity to be heard before a deprivation.  *See generally* 16B Am. Jur. 2d Constitutional Law § 955 Due Process of Law – Generally.

Barr argues that because the decision to shutter her businesses was made in the normal course of the defendants' business, predeprivation notice was practicable and thus required under the Supreme Court's holding in *Zinermon v. Burch*, 494 U.S. 113, 132, 110 S. Ct. 975, 987 (1990) ("In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking.").  Because of this, the exceptions to predeprivation due process recognized by the Supreme Court in the *Parratt/Hudson* doctrine are inapplicable.  *Parratt v. Taylor*, 451 U.S. 527, 101 S. Ct. 1908 (1981) (holding that a negligent prison official, in mishandling and losing a prisoner's mail, had effectuated a due process violation, but that the state's availability of a postdeprivation tort remedy cured the violation), *overruled by Daniels v. Williams*, 474 U.S. 327, 333, 106 S. Ct. 662, 666 (1986) ("Where a government official's act

7

causing injury to life, liberty, or property is merely negligent, 'no procedure for compensation is *constitutionally* required'") (emphasis added); *Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194 (1984) (applying the *Parratt* rationale to unauthorized intentional acts by prison guards when the state provided a tort remedy).

Instead, Barr argues, the district court should have analyzed the three-factor test in *Mathews v. Eldridge* to conclude that the City of Center Point should have provided her with predeprivation procedural due process.  424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976) (providing three factors to weigh in determining the sufficiency of predeprivation proceedings, including: (1) the private interest to be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail).

For their part, defendants argue that the City's hearing between Barr, her attorney, and the City Council on October 9, 2014, constituted predeprivation due process.  For this reason, they argue that providing such a predeprivation hearing eliminates the need for a *Mathews* analysis.  This overlooks the disturbing fact that on August 26, 2014, the defendants had already closed Barr's businesses for the

8

first time.  Because Barr was afforded such an opportunity, failed to comply with the City's demands, and failed to take advantage of her available postdeprivation remedies, defendants argue, the *Mathews* analysis was unnecessary.  Additionally, they argue that *McKinney* holds that the State must make a postdeprivation remedy available, and until they fail to do so, the plaintiff has no actionable § 1983 violation.

The defendants hinge a large portion of their argument on the basis of *McKinney*'s remark that an actionable § 1983 claim requires a refusal of the state to provide a remedy.  *McKinney*, 20 F.3d at 1563.  However, *McKinney*'s applicability is limited here: The *McKinney* plaintiff alleged that the board overseeing his predeprivation hearing was biased against him.  *Id.* at 1561 ("McKinney's only contentions are that the facially adequate procedure was biased against him and that the Board was preordained to find against him, regardless of the evidence.").  Because bias is an intentional wrong, the *Parratt* rationale applied, and all that was necessary was postdeprivation process.  *Id.* at 1563 ("As any bias on the part of the Board was not sanctioned by the state and was the product of the intentional acts of the commissioners, under *Parratt*, only the state's refusal to provide a means to correct any error resulting from the bias would engender a procedural due process violation.").  By contrast, the Supreme Court

9

has held that the general rule of procedural due process is that the state must attempt to provide a hearing before it deprives one of life, liberty, or property: "In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking." *Zinermon*, 494 U.S. at 132, 110 S. Ct. at 987. As the *Zinermon* court went on to note, the *Parratt* test, mentioned at great length in the parties' briefs, is thus an application of the *Mathews* balancing test, which concluded that providing a predeprivation remedy was practically impossible when an employee of the state acted in an unauthorized manner. *Id.* at 130.

We conclude that *Zinermon* rather than *McKinney* is more illuminating in this case. The defendants fail to rebut the fact that, although the second and third closures of Barr's businesses may have happened after officials provided sufficient due process, the first closure occurred with no predeprivation notice whatsoever. The district court, in fact, made this factual finding as well, noting that the City Council lacked either a resolution or a court order permitting the August 26 closure. Because of this, and because the defendants fail to explain how this deprivation might fall into some sort of exception akin to *Parratt/Hudson*, Barr successfully demonstrates an actionable procedural due process claim. Less clear,

10

however, is what to make of the second and third closures.  The record does show that Barr was provided with hearings before the second and third closures, but they may have been constitutionally inadequate, especially given the JCBC's failure to follow state statutory requirements requiring notice and comment.  Because we reverse and remand on the basis of the first closure and the defendants' failure to comply with *Zinermon*, we decline to address the merits of the procedures utilized for the second and third closures.

More fundamentally, the defendants' proffered application of *McKinney* is largely unworkable.  If *McKinney* were directly applicable to this scenario, then we would be gutting any notions of predeprivation due process and blanketly holding that a state can effectuate any and all deprivations under a "shoot first, ask questions later" mentality, so long as it offers *ex post facto* recourse.  Such a reading would allow the *Parratt/Hudson* exceptions to swallow the rules articulated in *Zinermon* and *Mathews*.  The facts of *McKinney* are mostly inapposite to this case, and we decline to apply it in such a manner that eliminates notions of predeprivation procedural due process.

Having established that Barr successfully states a claim for procedural due process infringement, we must next determine whether she properly preserved the issue for appeal.  In rejecting Barr's Rule 59 motion, the district court seemed to

11

think Barr's time had passed, stating: "'A party who aspired to oppose a summary judgment motion must spell out his arguments squarely and distinctly, or else forever hold his peace.'" *Barr v. Johnson* at \*3, No. 2:16-cv-01340-VEH, 2018 WL 3067936 (internal citations omitted). That may have justified the district court's refusal to reconsider its grant of summary judgment, but Barr is free to make new arguments – at least, new ones advancing the same claim – on appeal that are distinct from the ones raised in the district court. *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 534, 112 S. Ct. 1522, 1532 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below.").

Looking at Barr's memorandum in opposition to the motion for summary judgment, one can easily see that she raised the same general argument that she now advances on appeal – that she was deprived of procedural due process when the City did not provide her with a predeprivation hearing. Plaintiff's Response in Opposition to Defendants', the City of Center Point, Thomas Henderson, and John Watkins, Motion for Summary Judgment at 17, *Barr v. Johnson*, (No. 2:16-cv-01340-VEH) ("*Prior to depriving Barr of her property*, the City never served Barr with notice that her business doors were going to be locked; it never passed a resolution to lock her doors, and her doors were locked by the City without a court

12

order.") (emphasis added).  While her argument is woefully lacking in its efforts to distinguish *McKinney*, Barr did present this claim to the district court, and is free to advance new arguments on appeal.  *See Secretary, U.S. Dept. of Labor v. Preston*, 873 F.3d 877, 883 n. 5 (11th Cir. 2017) ("Parties can most assuredly waive positions and issues on appeal, but not individual arguments – let alone authorities. Offering a new argument or case citation in support of a position advanced in the district court is permissible – and often advisable.") (internal citations omitted). Additionally, because Barr prevails on appeal against the initial grant of summary judgment, we need not consider the merits of her Rule 59 motion.  *Urfirer v. Cornfeld*, 408 F.3d 710, 727 (11th Cir. 2005) ("[W]e affirm the district court's grant of summary judgment as to Count VI and reverse as to the others. . . . Accordingly, Urfirer's appeals from the district court's denial of his Rule 59 motion to amend the final summary judgment and his Rule 60 motion for relief from judgment are now moot.").

B. *Qualified immunity*

We also decline to reach the defendants' argument presented in their appellee brief that Henderson and Watkins are entitled to qualified immunity on Barr's procedural due process claim.  The district court, finding that Barr suffered no constitutional infringement, declined to reach this question, initially presented

13

in the defendants' motion for summary judgment.  We decline to address the qualified-immunity issue in the first instance.

## IV.

Although we share the district court's frustration that Barr could, and should, have presented higher quality arguments at the summary judgment stage, we conclude that she advanced her predeprivation due process claim sufficiently to preserve it on appeal.  On the merits, the district court erred in granting summary judgment for the defendants.  As for the defendants' qualified immunity argument, we decline to address it for the first time on appeal.  However, that argument can be addressed by the district court if raised again on remand.  Accordingly, we reverse the district court's grant of summary judgment and remand this case for further proceedings consistent with this opinion.

REVERSED and REMANDED.