■ BONNIE BLOSS et al., Appellants, v VA'AD HARABONIM OF RIVERDALE et al., Respondents. [610 NYS2d 197] —Order, Supreme Court, Bronx County (Anita Florio, J.), entered April 5, 1993, which, *inter alia,* granted the defendants' motion and cross motions for summary judgment dismissing the complaint, unanimously reversed, as limited by the briefs, on the law, the motion and cross motions are denied, the complaint is reinstated, and the matter is remitted to the Supreme Court for further proceedings, without costs.

In June of 1985, the plaintiff Bloss, owner of Riverdale Glatt, Inc., a retail Kosher butcher business, sought Kosher sanctioning and supervision from the defendant Va'ad Harabonim of Riverdale ("Va'ad"), without which observant Jewish customers would likely refuse to patronize her store. The individual defendants are rabbis and assistant rabbis who comprised the Va'ad. Although the plaintiff was granted Kosher sanctioning in July of 1985, in 1991, she was informed that it was being terminated.

She then instituted this action for breach of implied contract, slander per se, intentional interference with prospective contractual relationships, interference with contract and intentional infliction of emotional distress. Bloss maintained that the Va'ad stripped her of the Kosher supervision in order to provide such supervision to her competitor, with whom members of the Va'ad had a special relationship. She further alleged that on July 6, 1991, the defendant Rosenblatt, speaking on behalf of the Va'ad, told a Riverdale Jewish Center

that her supervision was being withdrawn because she was short weighting customers at her store on special orders and because she was of questionable honesty.

Due to the withdrawal of the certification, and, in order to stay in business, the plaintiff sought Kosher supervision from the Circle K organization, which she contended, failed to abide by an oral agreement to supervise her after the defendants pressured it into reneging. She thereafter contracted with another organization which also allegedly failed to honor its agreement after being contacted by the defendants. Because of the defendants' actions, the plaintiff contended that she was forced to sell her business at a loss.

The defendants moved and cross moved, pursuant to CPLR 3211 and 3212, to dismiss the complaint on the basis, *inter alia*, of a release executed by the plaintiff on August 1, 1991, in which she agreed to release and discharge members of the Va'ad from liability relating to the removal of the certification. The Supreme Court, concluding that all the defendants were seeking summary judgment, granted them such relief and dismissed the complaint. The court found the release valid and enforceable since the plaintiff was represented by counsel at the time of its execution.

We note initially that the Supreme Court properly interpreted the motion and cross motions as deliberately charting a summary judgment course and, therefore, properly treated them as such *(see, Mihlovan v Grozavu,* 72 NY2d 506; *Four Seasons Hotels v Vinnik,* 127 AD2d 310). While we also agree with the court's determination rejecting the plaintiff's contention that the release was invalid for lack of consideration *(see,* General Obligations Law § 15-303; *Mergler v Crystal Props. Assocs.,* 179 AD2d 177, 180), it was error to grant the motion and cross motions to dismiss since questions of fact exist as to the procurement of the release.

A release, even though properly executed, may, nonetheless, be void *(Fleming v Ponziani,* 24 NY2d 105, 111). Where fraud or duress in the procurement of a release is alleged, a motion to dismiss should be denied *(see, Newin Corp. v Hartford Acc. & Indem. Co.,* 37 NY2d 211, 217; *Goldsmith v National Container Corp.,* 287 NY 438; *Mergler v Crystal Props. Assocs., supra; Touloumis v Chalem,* 156 AD2d 230; *Dunkin' Donuts v Rovegno,* 100 AD2d 532; *Anger v Ford Motor Co.,* 80 AD2d 736).

The function of the court upon a motion for summary judgment is issue finding not issue determination *(Sillman v*

*Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404). The plaintiff's detailed allegations concerning the circumstances leading up to the execution of the release, together with the conflicting affirmations submitted by both sides, preclude an award of summary judgment.

According to the defendant Rabbi Nachman Cohen, in the Spring of 1991, the Va'ad began receiving complaints from the plaintiff's customers that packages of meat prepared for special orders did not actually weigh as much as the price-weight labels. The Va'ad notified the on-site compliance monitor who thereafter checked the weights of the packages as did the Va'ad. According to Cohen's affidavit, however, although the Va'ad found that the weights of the special order packages checked at random matched the labels exactly, the Va'ad suspected that the monitor had compromised the investigation by informing the plaintiff of its existence. Since the Va'ad found that it could not properly monitor the plaintiff's butcher shop, it decided to revoke her certification.

Cohen added that in late July of 1991, the plaintiff asked the Va'ad to reconsider its decision. Although it declined to recertify the shop, the Va'ad agreed to assist the plaintiff in obtaining alternative certification and publicly to endorse the new certifying rabbi. On the advice of counsel, the plaintiff agreed to enter into a mutual release of liability with the Va'ad and its members whereby each party released the other from any claims of liability arising out of the events that transpired. Cohen maintained that the Va'ad abided by the agreement by helping the plaintiff obtain certification from a rabbi in Long Island.

In response, the plaintiff denied the assertions as to weight discrepancies in her business and further asserted that she signed the release under duress. She maintained that she signed the release while under the strain of a failing business and with the Va'ad's assurance that she would be allowed to seek alternative certification without its opposition. Instead of assisting her to obtain other certification as promised, however, the Va'ad opposed her efforts and pressured other organizations providing Kosher supervision to deny her certification.

In an affirmation submitted in support of the plaintiff's contention, the attorney who represented her in her transactions with the Va'ad alleged that the plaintiff was summoned to the Va'ad minutes before the onset of the Sabbath and was presented with two choices: she could either lose her supervi-

sion or sell her store within a matter of weeks. She was given the weekend to make her decision. Only after her attorney contacted a friend who was a rabbi and a member of the Va'ad was he permitted to attend a second meeting with the Va'ad. He was informed, however, that he was not to act as the plaintiff's advocate since it was not a secular court of law.

After her attorney obtained a commitment from Circle K that it would supervise the plaintiff, he was informed that the organization would not provide such supervision because a Va'ad member told its director that the Riverdale Va'ad did not want Circle K in its community, particularly to provide its services to the plaintiff. The plaintiff's attorney then wrote to one of the defendant rabbis, advising him that he was going to refer the plaintiff to other counsel for further proceedings since he was now a witness. The Va'ad then agreed that it would assist the plaintiff in obtaining alternative certification if she would execute a release of liability.

Her attorney then prepared a draft of a release setting forth both sides' agreements. However, he stated that he was subsequently informed that the proposed obligations of the Va'ad would have to be deleted for the release to be acceptable to the defendants. In response to his protests, a rabbi told the plaintiff's lawyer that if she did not sign the release as directed, it was not likely that the Va'ad would approve of any new supervision, thereby assuring the loss of the plaintiff's customers. He added that if she did sign, the Va'ad would approve supervision by an outside agency.

Based on these assertions, the plaintiff's lawyer prepared a new draft which excluded the promise made by the Va'ad. In a facsimile transmittal sheet to the rabbi who was acting as the intermediary, however, the attorney stated: "I am *not* reducing your personal commitments to me to a written letter. I am basing Bonnie's release on your good word."

The plaintiff's attorney alleged that despite the agreement, the Va'ad refused to allow Circle K to certify the plaintiff's store. The Va'ad, however, maintained that it abided by the agreement by helping the plaintiff obtain alternative certification from the rabbi on Long Island and by thereafter publicly endorsing Riverdale Glatt.

Although "a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between parties" (*Appel v Ford Motor Co.,* 111 AD2d 731, 732; *see also, Skluth v United Merchants & Mfrs.,* 163 AD2d 104, 106, *appeal with-*

*drawn* 79 NY2d 976), it is inequitable to allow a release to bar a claim where, as here, it is alleged that the releasor had little time for investigation or deliberation and that it was the result of overreaching or unfair circumstances *(Mangini v McClurg,* 24 NY2d 556, 567). The fact that the plaintiff was represented by counsel fails, in this instance, to determine the issue of whether or not she knowingly and voluntarily entered into the agreement in light of counsel's affirmation underscoring the plaintiff's allegations *(cf., Cortino v London Terrace Gardens,* 170 AD2d 305, *lv denied* 78 NY2d 853; *Machinery Funding Corp. v Loman Enters.,* 91 AD2d 528). Further, the defendants' contention that they cannot be guilty of economic duress for refusing to certify the plaintiff's establishment since they were not legally required to do so, fails to address the purported promises made to procure the release. A trial is therefore necessary to resolve the issues raised *(see, Mangini v McClurg, supra).*

Since the Supreme Court granted the defendants' motion and cross motions for summary judgment on the basis of the release, it did not reach their additional contention that the First Amendment's guarantee of religious freedom precludes adjudication of this action. Since we are remitting the matter for further proceedings, we decline to determine the issue in the first instance. We have, however, considered the parties' remaining contentions and find them to be without merit. Concur—Rosenberger, J. P., Ellerin, Nardelli and Williams, JJ. [As amended by unpublished order entered July 14, 1994.]