Luo v Cooper (2023 NY Slip Op 51490(U))

[*1]

Luo v Cooper

2023 NY Slip Op 51490(U)

Decided on April 28, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 28, 2024
Supreme Court, Kings County

Liya Luo, Plaintiff,

against
Loisie Cooper and LOPROOF TRUCKING LLC, Defendants.

Index No. 524270/2023

Pavlounis & Sfouggatakis, LLP, Brooklyn (Anthony Santora of counsel), for plaintiff.
Gallo Vitucci Klar LLP, New York City (Ross Lopez of counsel), for defendants.

Aaron D. Maslow, J.

The following numbered papers were used on this motion:
Submitted by Plaintiff:
NYSCEF Doc No. 3: Proposed Order to Show Cause
NYSCEF Doc No. 4: Affirmation of Andrew G. Sfouggatakis in Support
NYSCEF Doc No. 5: Exhibit A — Signed Release
NYSCEF Doc No. 6: Exhibit B — Letter to Defendant Cooper Dated April 20, 2023
NYSCEF Doc No. 7: Exhibit C — Summons & Complaint
NYSCEF Doc No. 8: Exhibit D — Stipulation Extending Time to Answer
NYSCEF Doc No. 9: Exhibit E — Decision in Fraser v Roberts
NYSCEF Doc No. 10: Exhibit F — Affidavit of Plaintiff Liya Luo
NYSCEF Doc No. 11: Exhibit G — Affidavit of Translator Li Chuan Liu
NYSCEF Doc No. 15: Order to Show Cause
NYSCEF Doc No. 16: Affidavit of Service
NYSCEF Doc No. 17: Statement of Authorization for Electronic Filing
NYSCEF Doc No. 18: Affidavit of Service
Submitted by Defendant:
NYSCEF Doc No. 19: Unsigned Affirmation of Ross Lopez in Opposition
NYSCEF Doc No. 20: Purported Affidavit of Brian Cantin
NYSCEF Doc No. 21: Exhibit A — Claim Text Messages
NYSCEF Doc No. 22: Exhibit B — Signed Release
NYSCEF Doc No. 23: Exhibit C — Claim Payment Detail
Upon the foregoing papers and having heard oral argument on the record, the within motion is determined as follows.
I. Background
The within motion, brought on by order to show cause, seeks to void and set aside a release executed by Plaintiff on April 5, 2023, as described below.
According to Plaintiff, on March 31, 2023, Defendant Loisie Cooper (hereinafter "Defendant Cooper") was operating a vehicle owned by Defendant Loproof Trucking, LLC. Plaintiff Liya Luo's (hereinafter "Plaintiff") vehicle was stopped at a location on Third Avenue near the intersection of 63rd Street in Brooklyn, New York. Defendant Cooper backed up and struck the vehicle operated by Plaintiff, resulting in vehicle damage and personal injuries. Progressive Insurance Company ("Progressive") happened to insure both vehicles. (See NYSCEF Doc No. 7, complaint; NYSCEF Doc No. 10, Luo aff; NYSCEF Doc No. 4, Sfouggatakis aff.)
On or about April 5, 2023, Plaintiff's husband, who is not proficient in the English language, received a call from someone who claimed to be from Progressive. Plaintiff's husband was under the impression that Progressive was settling their claim for vehicle damage. Plaintiff is also not proficient in the English language and has never been able to read or write in English. That same day, Progressive Insurance sent Plaintiff an email requesting a signature via DocuSign for the settlement release, which was all in the English language. The signed release is dated April 5, 2023. The document was not explained to Plaintiff in her native language of Chinese Cantonese, nor was any Chinese translation provided. (See NYSCEF Doc No. 10, Luo aff; NYSCEF Doc No. 4, Sfouggatakis aff; NYSCEF Doc No. 5, release.)
As it turned out, the document — which was signed by Plaintiff — was a release which barred her from asserting any further claims arising out of the accident, including any for personal injuries. Plaintiff did not understand the contents of the documents and believed it to be a vehicle damage settlement from her own insurance company, Progressive. She did not realize that Progressive also insured the Defendants' vehicle and that the release also affected a claim for personal injuries. Plaintiff would never have signed the release had she known that the $2,500 she was receiving from Progressive would also cover any claim against the Defendants for personal injuries. Later on, after retaining counsel, the import of what she had signed was explained to her. (See NYSCEF Doc No. 10, Luo aff; NYSCEF Doc No. 4, Sfouggatakis aff.)
Defendants take issue with Plaintiff's presentation of the facts regarding signing the release. They claim that after Plaintiff made a claim for damages, including bodily injury and medical bills, an adjuster, Brian Cantin, spoke with Plaintiff through the assistance of a Mandarin interpreter. This conversation took place on April 4, 2023. Plaintiff agreed to accept Progressive's settlement offer of $2,500 as full and final settlement of her bodily injury claims. At no time during the conversation did Plaintiff state that she did not or could not understand the interpreter or the terms of the settlement agreement and written release (see NYSCEF Doc No. [*2]19, unsigned Lopez aff; NYSCEF Doc No. 20, purported Cantin aff).

II. Discussion

(A) Opposition Papers Not in Compliance with IAS Part 2 Rules
As directed by Part I, Subpart B, § 8 of Supreme Court, Kings County, IAS Part 2 Rules,
Unless otherwise directed in the order to show cause, papers in response to a motion or petition brought on by order to show cause shall be submitted at least eight days before the motion calendar date designated therein; however, if the order to show cause is received within such eight-day period, the responsive papers shall be submitted not later than by 5:00 p.m. of the second day prior to the motion calendar date designated in the order to show cause. No reply papers shall be submitted by the movant or petitioner where a motion or special proceeding is commenced by order to show cause unless leave is obtained from the Court.
(https://ww2.nycourts.gov/courts/2jd/kings/civil/MaslowRules.shtml.)
Defendants here were in violation of IAS Part 2 Rules, as they submitted their opposition papers on February 1, 2024, the day before oral argument (see NYSCEF Doc Nos. 19-23). In order for their opposition to be considered, Defendants would have had to submit their papers responsive to Plaintiff's motion by January 25, 2024, the eighth day before February 2, 2024, the return date set forth in the order to show caused signed on January 12, 2024.
A trial court possesses the right to enforce the rules governing practice and procedure before it (e.g. McGee v Bishop, 192 AD3d 1446 [3d Dept 2021] [page-limit for memoranda of law]; Basie v Wiggs, 173 AD3d 1127 [2d Dept 2019] [Matrimonial Part rules]; Appleyard v Tigges, 171 AD3d 534 [1st Dept 2019] [60-day summary judgment motion deadline]; Biscone v Jetblue Airways Corp., 103 AD3d 158 [2d Dept 2012] [provide working copies of electronically-filed documents]; Maddus v Bowman, 12 AD2d 626 [2d Dept 1960] [Statement of Readiness Rule requiring plaintiff to furnish authorization to obtain hospital records]; Shmerelzon v Gravesend Mgt., Inc., 80 Misc 3d 1233[A], 2023 NY Slip Op 51155[U] [Sup Ct, Kings County 2023] [adjournment requests must contain specified data and be submitted three days in advance]; Wade v Khadka, 80 Misc 3d 1222[A], 2023 NY Slip Op 51058[U] [Sup Ct, Kings County 2023] [identify party seeking adjournment and good cause reason]; Brick&Mortar LLC v Momo Sushi Inc., 79 Misc 3d 1239[A], 2023 NY Slip Op 50838[U] [Sup Ct, Kings County 2023] [submission of referenced electronically-filed documents as exhibits to motion papers]; Stipa Sprecase v Tenreiro, 2023 WL 3972435 [Sup Ct, NY County 2023] [motions to reargue or renew be made by order to show cause]; Latorre v Rahman, 2022 NY Slip Op 32044[U] [Sup Ct, NY County 2022] [no motions permitted until conference is held]; Bedingfield v Dairymade Farms, Inc., 46 Misc 2d 146, 148 [Sup Ct, Suffolk County 1965] [rule requiring statement of readiness be filed with note of issue "is consistent with the inherent power of the Court to control its business."]; Scully v Jefferson Truck Renting Corp., 43 Misc 2d 48 [Sup Ct, Kings County 1964] [statement of readiness be filed with note of issue]; cf. Crawford v Liz Claiborne, Inc., 11 NY3d 810 [2008] [IAS Part rule not in effect when preliminary conference order issued, [*3]resulting in application of Local Rules]). "[I]t is within the court's inherent and statutory power to control the order of its business, and to so conduct its business as to safeguard the rights of all litigants, to preclude unfair procedural advantage to any party, and to prevent needless disruption of orderly court procedures" (Maddaud v Bowman, 12 AD2d 626, 626 [2d Dept 1960]).
Additionally, under CPLR § 2214 (b),
A notice of motion and supporting affidavits shall be served at least eight days before the time at which the motion is noticed to be heard. Answering affidavits shall be served at least two days before such time. Answering affidavits and any notice of cross-motion, with supporting papers, if any, shall be served at least seven days before such time if a notice of motion served at least sixteen days before such time so demands; whereupon any reply or responding affidavits shall be served at least one day before such time.
Therefore, not only were Defendant's opposition papers not in compliance with IAS Part 2 Rules, but Defendant's opposition papers were also not in compliance with this CPLR provision. In U.S. Bank Trust, N.A. v Rudick (2d Dept 2017), the Second Department held that the Supreme Court has the discretion to determine whether to accept late papers. This Court rejects Defendant's opposition papers and thus, Defendant has no effective opposition to Plaintiff's papers. The Court finds a lack of a sufficient excuse for the late submission. None was proffered in counsel's purported affirmation, which was not even signed (see NYSCEF Doc No. 19, Lopez aff).

 (B) Improper Notarization of Affidavit
One of the late papers submitted by Defendants was the purported affidavit of Brian Cantin, their claims adjuster who procured the release from Plaintiff. It bears a notarization of Nicole M. Carrasquillo, a New Jersey notary public. The venue is set forth as Oneida County, in New York. (See NYSCEF Doc No. 20, purported Cantin aff.)
In Matter of Sakaris (160 Misc 2d 657, 658 [Civ Ct, Richmond County 1993]), the court stated that a notary public in New Jersey "may not acknowledge a document for filing in New York where he witnessed the execution of said document in New York." The court there held that the affidavit there was defective because the notary public was not authorized in New York.
New Jersey recently amended its notarial statutes in the midst of the COVID-19 pandemic to enable its notaries public to use communication technology to notarize documents executed by remotely located individuals (see NJ L 2021, c 179 eff Oct. 20, 2021). The provisions are embodied in NJSA 52:7-10.10 (entitled "Notarial acts performed by remotely located individuals; definitions; application of section; requirements; certificate; retention requirements; notification requirements; rules and regulations; legislative intent; service of process"). In subsection (d), it provides that "A notarial officer located in New Jersey may perform a notarial act using communication technology for a remotely located individual if," inter alia, "the notarial officer is able reasonably to confirm that a record before the notarial officer is the same record in which the remotely located individual made a statement or on which the remotely located individual executed a signature" (NJSA 52:7-10.10 [d] [2]). This requirement may be satisfied if the remotely located individual signs the record and a declaration [*4]which is in substantially the following form: "I declare under penalty of perjury that the record to which this declaration is attached is the same record on which [name of notarial officer] performed a notarial act and before whom I appeared by means of communication technology on [date]" (NJSA 52:7-10.10 [f] [1] [a]); the remotely located individual must then send the record and declaration to the notarial officer within three days after the notarial act was performed, and the notarial officer, upon receipt of the record and declaration, is to execute the notarial act certificate, such as a certificate of oath (see NJSA 52:7-10.10 [f] [2] [b]).
While this combined act of signing the record and the declaration "are not intended to exclude other procedures to satisfy the requirements of this section for a notarial act performed with respect to a tangible record" (NJSA 52:7-10.10 [g]), it is quite clear that the record must be actually signed by the remotely located individual, because the word "sign" or variations of it are used eight times in section 52:7-10.10; three of those times the word "signature" is used. The entire process for remotely performing acts of a notarial nature with respect to a tangible document contemplates a person, whether in New Jersey or elsewhere, actually placing hand to paper and executing his signature on it.
The purported affidavit of Brian Cantin which was submitted late by Defendants does not contain an actual signature of Mr. Cantin. Rather, there appears his name in a typographical script font, presumably applied through a word processing program on a computer. To the left appears a hand-inscribed signature and seal of Ms. Carrasquillo, the New Jersey notary public. (See NYSCEF Doc No. 20 at 3.) The procedures of NJSA 52:7-10.10 (f) (1) (a) referring to the remotely located individual's signing the record and a declaration were not performed. While signing a declaration evidently is not an absolute mandate, nonetheless the "requirements of this section for a notarial act performed with respect to a tangible record" must be satisfied (NJSA 52:7-10.10 [h]) — and that would include the notary public's observing the affiant's actually executing an affidavit by hand. The notary public herein could not have observed this since there is no actual signature of Mr. Cantin. This Court finds that the provisions of NJSA 52:7-10.10 for using communication technology to perform a notarial act for a remotely located individual were not complied with, the notarization was improperly performed, and any presumption arising from a notarial act has been vitiated.
New York has amended its laws with respect to authenticating the contents of statements where an affidavit is otherwise required. CPLR 2106 now permits a self-affirmed affirmation to be used in place of an affidavit:
The statement of any person wherever made, subscribed and affirmed by that person to be true under the penalties of perjury, may be used in an action in New York in lieu of and with the same force and effect as an affidavit. Such affirmation shall be in substantially the following form:
I affirm this ___ day of ______, ____, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law."
(CPLR 2106 eff Jan. 1, 2024.) Mr. Cantin could have submitted an affirmation compliant with this new provision, but did not do so.
In light of this, and considering that the purported Cantin affidavit was used to contradict Plaintiff's assertions surrounding her signing of the release for $2,500, the averments in the [*5]purported affidavit cannot be deemed probative. Those of Plaintiff are deemed unrefuted. Even if this Court were to accept Defendants' late opposition papers, Defendants' arguments based on the factual allegations of Brian Cantin still cannot be considered.

(c) Release a Product of Duress, Fraud, Misrepresentation, and Overreaching
A release "is a jural act of high significance without which the settlement of disputes would be rendered all but impossible. It should never be converted into a starting point for renewed litigation except under circumstances and under rules which would render any other result a grave injustice. It is for this reason that the traditional bases for setting aside written agreements, namely, duress, illegality, fraud, or mutual mistake, must be established or else the release stands." (Mangini v McClurg, 24 NY2d 556, 563 [1969]; see Centro Empresarial Cempresa S.A. v America Movil, S.A.B. de C.V., 17 NY3d 269 [2012]). "The requirement of an 'agreement fairly and knowingly made' has been extended, however, to cover other situations where because the releasor has had little time for investigation or deliberation, or because of the existence of overreaching or unfair circumstances, it was deemed inequitable to allow the release to serve as a bar to the claim of the injured party" (Mangini v McClurg, 24 NY2d at 567).
The entire circumstances under which Plaintiff signed the release are highly suspect. Progressive insured both vehicles and Plaintiff obviously understood the release to relate to her claim for damage to her vehicle. Clearly, Progressive did not convey to Plaintiff its adversarial position — that it was not only Plaintiff's insurer but also liable for the tortious conduct of Defendants. Progressive had an obligation to procure any release fairy and knowingly. It was not contemplated by Plaintiff that the release related to personal injuries. Plaintiff did not understand English and Progressive was aware of this.
The record evidence (Plaintiff's submissions) establishes that Progressive took advantage of the situation — including Plaintiff's lack of legal counsel — and, without it obtaining the full picture of Plaintiff's injuries, induced her to sign a release of all claims to her detriment (see Pimpinello v Swift & Co., 253 NY 159 [1930] [complaint for cancellation of release sufficiently alleged that plaintiff's attorney represented paper to be receipt for part payment]; Sacchetti-Virga v Bonilla, 158 AD3d 783 [2d Dept 2018] [release of personal injury claim for $1,500]; Bloss v Va'ad Harabonim of Riverdale, 203 AD2d 36 [1st Dept 1994] [issue of fact re release to kosher supervision agency who discontinued kashrut supervision]). Since the release was procured through duress, fraud, misrepresentation, and overreaching it is of no legal effect.

 Conclusion
Accordingly, it is hereby ORDERED as follows:
(1) Plaintiff's motion is granted.
(2) The subject release executed by Plaintiff, dated April 5, 2023, is declared void and of no effect, and is set aside and vacated.
(3) Plaintiff shall return the $2,500 paid to her for the said release within 20 days after entry of this order.
E N T E R
___________________________
AARON D. MASLOW
Justice of the Supreme Court of the State of New York