Kuvshynov v Fox News Network, LLC (2025 NY Slip Op 52088(U))

[*1]

Kuvshynov v Fox News Network, LLC

2025 NY Slip Op 52088(U)

Decided on December 29, 2025

Supreme Court, New York County

Rosado, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 29, 2025
Supreme Court, New York County

Andriy Kuvshynov, as surviving parent and personal representative of Oleksandra Kuvshynova, deceased, and individually, Iryna Mamaysur, as surviving parent and personal representative of Oleksandra Kuvshynova, deceased, and individually and Shane Thomson, individually, Plaintiffs,

againstFox News Network, LLC, Fox Corporation, News Corporation, Rupert Murdoch, Suzanne Scott, Benjamin Hall, HarperCollins Publishers L.L.C., Defendant.

Index No. 152374/2024

For Plaintiffs: Seth A. Dymond, Esq. (Belluck Law LLP)For Defendants Fox News Network, LLC, Fox Corporation, Rupert Murdoch, Suzanne Scott, and Benjamin Hall: Steven G. Mintz, Esq. (Mintz & Gold LLP) and Charles A. Michael, Esq. (Steptoe LLP)For Defendants News Corporation a/k/a News Corp. and HarperCollins Publishers L.L.C.: Laura R. Handman (Davis Wright Tremaine LLP)

Mary V. Rosado, J.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 89, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 128, 135, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 165 were read on this motion to/for DISMISS.
The following e-filed documents, listed by NYSCEF document number (Motion 003) 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 90, 112, 113, 114, 115, 116, 117, 118, 119, 129, 136, 162, 166 were read on this motion to/for DISMISS.The following e-filed documents, listed by NYSCEF document number (Motion 004) 8, 9, 10, 11, 12, 13, 14, 15, 88, 120, 121, 122, 123, 124, 125, 126, 127, 130, 137, 163, 164 were read on this motion to/for DISMISS.
Upon the foregoing documents, and after a final submission date of November 18, 2025, motion sequences 002 through 004 are consolidated for disposition and decided as follows:
A. Defendants Fox News Network, LLC ("Fox News"), Fox Corp., Rupert Murdoch [*2]("Murdoch") and Suzanne Scott's ("Scott") (collectively "Fox Defendants") motion ("Mot. Seq. 002") to dismiss Plaintiffs Andriy Kuvshynov, as surviving parent and personal representative of Oleksandra Kuvshynova ("Kuvshynova"), deceased and individually, Iryna Mamaysur, as surviving parent of Oleksandra Kuvshynova, deceased and individually (together with Andriy Kuvshynov, the "Kusvhynovs"), and Shane Thomson ("Thomson") (collectively "Plaintiffs") Amended Complaint pursuant to CPLR 3211(a)(1), (a)(5), (a)(7), and (g) is granted in part and denied in part.B. Defendant Benjamin Hall's ("Hall") motion ("Mot. Seq. 003") to dismiss Plaintiffs' Amended Complaint pursuant to CPLR 3211(a)(1), (a)(5), (a)(7), (a)(8), and (g) is granted in part and denied in part.C. Defendants HarperCollins Publishers LLC ("HarperCollins") and News Corporation aka News Corp. ("News Corp.") (collectively "HarperCollins Defendants") motion ("Mot. Seq. 004") to dismiss Plaintiff's Amended Complaint pursuant to CPLR 3211(a)(1), (a)(7), and (g) is granted in part and denied in part.I. Background
In the early days of the Russian invasion of Ukraine, specifically on March 14, 2022, Kuvshynova, a 24-year-old independent contractor employed by Fox News, was killed, allegedly near Irpin, Ukraine, where some of the heaviest fighting between Russian and Ukrainian troops was ongoing. According to Plaintiffs, Fox News was responsible for Kuvshynova being near Irpin despite that location being restricted to journalists. Allegedly, Defendants tried to cover up Kuvshynova's death and subsequently shifted blame for the disaster on Thomson, a security contractor. The Court briefly recounts the detailed and lengthy factual allegations contained in the Amended Complaint to provide context to this Decision and Order on the several nuanced and multi-faceted dispositive motions.
In January of 2022, Fox News set up headquarters in the Intercontinental Hotel in Kyiv, Ukraine, to provide coverage of the impending Russian military threat to Ukraine. The Fox News crew consisted of reporter Trey Yingst and two camera men: David Gamliel and Pierre Zakrzewski ("Zakrzewski"). Fox contracted security advisors through non-party SEPAR, a United Kingdom based security agency, who employed Thomson and Duncan "Jock" Gordon ("Gordon"), former British soldiers whose job it was to keep the Fox crew out of unreasonably hazardous situations. Fox also contracted local Ukranians, including Kuvshynova, who served as a guide and translator. Fox deployed two producers to Kyiv: Yonat Frilling and Jennifer Gardner. However, as Russian forces approached the outskirts of Kyiv, Frilling and Garner were evacuated.
Although Fox was evacuating producers, Fox News host Hall [FN1]
travelled to Kyiv to air segments, despite the protests by Fox crew members that Hall's arrival created additional security and logistical concerns. Under these strenuous conditions, the Fox crew divided into two teams which alternated venturing out in search of footage, with one security contractor attached to each team. Despite the allegedly inadequate support, Fox's management in New York applied pressure to its reporters in Kyiv to obtain footage of ongoing military action.
On March 12, 2022, Thomson advised the Fox crew that Russians were infiltrating Irpin with small teams mimicking the appearance of news crews, and as a result, Ukrainian Forces were under orders to fire on any approaching person or vehicle. In addition, Russian forces were allegedly firing on actual news crews. Under these circumstances, Thomson advised the Fox crew it was unsafe to go anywhere near Irpin in the foreseeable future. On March 13, 2022, Ukrainian forces launched a counterattack against Russian forces near Irpin. When Fox's New York executives allegedly pushed their reporters to visit Irpin to search for footage on March 13, 2022, Thomson allegedly vetoed this decision. That same day, Brent Renaud, an American journalist, was killed by Russian fire near Irpin, leading the Mayor of Irpin to ban all foreign journalists from the area.
Nonetheless, on March 14, 2022, Hall allegedly directed Zakrzewski, Gordon, and Kuvshynova to accompany him in the direction of Irpin, despite Fox's contracted Ukrainian driver refusing to go in that direction because it was too dangerous. The crew were to meet with Ukrainian irregulars who were members of the paramilitary Azov Battalion group ("Azov"), and Hall allegedly misrepresented that the rendezvous with Azov was organized by the Ukrainian military press liaison. In actuality, the Azov members were allegedly freelancing and attempting to profit on foreign journalists seeking military action footage.
When the crew met the Azov members, there was not enough room in the car, so Hall directed Gordon, the SEPAR security consultant, to stay behind. Gordon allegedly reiterated to Hall that the crew was not to go beyond Kyiv's city limits. The crew tried to film Ukrainian defenses around Kyiv, but they were turned away at gunpoint due to a prohibition on foreign media filming and broadcasting Ukrainian defenses. The Azov irregulars then suggested the crew visit the destroyed village of Horenka, which was close to Russian lines, beyond Kyiv's city limits, and adjacent to Irpin, in an area where Thomson, Gordon, and the Mayor of Irpin advised journalists to stay away. A Ukrainian commander also allegedly told Hall not to go in this direction because of ongoing Ukrainian counteroffensives. Nonetheless, the crew went, filmed, and was on the main road near the conjunction of Bucha, Irpin and Hostomel when multiple artillery shells hit near their car. Hall and Zakrzewski were able to leave the car after the second shell exploded, but a third shell made direct contact with the car and killed Kuvshynova. Zakrzewski bled to death on the side of the road. Ukrainian soldiers found Hall grievously injured and evacuated him to a hospital in Kyiv, and he survived.
The remainder of the Fox crew left behind in Kyiv was not aware of any problem until Gordon called reporter Trey Yingst around 1 p.m. where Gordon disclosed that he was left behind by Hall to make room for Azov irregulars. Nobody knew where the team led by Hall was located. Thomson, Fox, and other news organizations began a major search for the missing crew. Hall was found in a hospital in Kyiv on the evening of March 14, 2022, while Zakrzewski and Kuvshynova were found in Kyiv's morgue on March 15, 2022. Over Thomson's objection, Fox required him to transport Zakrzewski's body across the Polish-Ukrainian border and deliver Zakrzewski's body to his widow. Fox allegedly instructed Thomson to not answer any of Zakrzewski's widow's questions. Thomson was subsequently re-assigned and then fired, allegedly without explanation. He allegedly requested help from Fox in dealing with trauma from the entire ordeal, but Fox did not respond even after Thomson allegedly attempted to commit suicide. Allegedly, Fox tried to turn Thomson into a scapegoat for the incident and claimed he had a drinking problem in Kyiv, which was the reason for Zakrzewski and Kuvshynova's death.
Fox offered Kuvshynova's parents, who were unrepresented, Kushnyova's backpay for two months, funeral expenses, and life insurance proceeds, contingent on her father, Kuvshynov, signing a waiver of all claims against Fox. Allegedly, at the time the waiver was presented, Fox did not reveal any information regarding the circumstances surrounding Kuvshynova's death. Hall subsequently published a book with HarperCollins on March 14, 2023, which included an allegedly misleading account that Russian forces were understood to be 30 miles away from where Fox was filming. Plaintiffs now sue Defendants under numerous causes of action. The Defendants in turn have each moved to dismiss the Amended Complaint. The motions are consolidated for disposition and decided in accordance with the reasons that follow.
II. Discussion
A. Fox Defendants' Motion (Mot. Seq. 002)
i. Release
The Fox Defendants' motion to dismiss the Kuvshynovs' Complaint based on the argument that they signed a release and waiver is denied. This is a pre-answer motion to dismiss, where the facts alleged are accepted as true, and the benefit of all favorable inferences which may be drawn from the pleadings is given to the plaintiffs (Sassi v Mobile Life Support Services, Inc., 37 NY3d 236, 239 [2021]). While generally a valid release will bar an action on a claim that is the subject of the release, if a plaintiff shows the release was obtained through duress, illegality, fraud, or mistake, it may be invalidated (Centro Empresarial Cempresa S.A. v America Movil, S.A.B. de C.V., 17 NY3d 269, 270 [2011]). "A release should not be converted into a starting point for renewed litigation except under circumstances and under rules which would render any other result a grave injustice" (Mangini v McClurg, 24 NY2d 556, 563 [1969]).
The Court finds enforcing the release at this juncture, without the benefit of any discovery, would result in a grave injustice. When the Kuvshynovs signed the waiver and release, they were unrepresented, had just learned their daughter died, and were living in an active war zone. The circumstances under which Kuvshynova died were allegedly misrepresented to the Kuvshynovs, who, given the circumstances of grieving the loss of a daughter while navigating a calamitous invasion by large nuclear-armed country, did not have the ability to investigate whether the Fox Defendants' representation of events was accurate (see also Paulino v Braun, 170 AD3d 506 [1st Dept 2019] [the nature of the relationship between the parties and the disparity between consideration received and fair value of plaintiff's claim raised issue of fact as to the validity of the release]). Given the totality of the circumstances, and as the Amended Complaint and affidavits submitted in opposition adequately alleged fraud and duress, the Fox Defendants' motion to dismiss based on the signed release and waiver is denied (see also Chadha v Wahedna, 206 AD3d 523, 525 [1st Dept 2022]; Bloss v Va'ad Harabonim of Riverdale, 203 AD2d 36, 40 [1st Dept 1994] ["it is inequitable to allow a release to bar a claim where, as here, it is alleged that the releasor had little time for investigation or deliberation and that it was the result of overreaching or unfair circumstances."]).
The Fox Defendants' ratification argument is equally unavailing. A release will not be read to cover matters that the parties did not intend to dispose of unless it can be shown that the specified matter was in dispute at the time the release was given (Glassberg v Lee, 82 AD3d 836, 837 [2d Dept 2011]). The Kuvshynovs were only paid Kuvshynova's unpaid wages, funeral expenses, and a life insurance policy benefit. They were not paid for any damages under New York or Ukrainian law, nor have the Fox Defendants come forward with any evidence that they were paid for damages sought in this litigation. This, raises an issue of fact as to whether the [*3]claims raised here were in dispute or even known at the time the release was given. The release is also deceptive in that it is characterized as an agreement that the Fox Defendants "may be of assistance to you as set forth herein." Given this wording, an unrepresented lay person living in a foreign country experiencing a brutal military invasion may reasonably construe the agreement not as a release of future claims, but as an agreement to provide financial assistance given their daughter's death and the ongoing invasion. Issues of fact are further compounded because there is no certified translation of the Ukrainian version of the agreement.
ii. Wrongful Death Claim
The motion to dismiss the Kuvshynovs' wrongful death claim is denied. The Court is satisfied that Plaintiffs have demonstrated their right to sue on behalf of Kuvshynova's estate pursuant to Ukrainian law (see NYSCEF Doc. 99). That document, subscribed by a notary, states that the Kuvshynovs are compulsory heirs to Kuvshynova's estate pursuant to Ukrainian Civil Code Article 1241. That provision states that regardless of the content of a will, certain categories of heirs, including "incapacitated citizens" automatically are entitled to a share in the inheritance of the decedent's estate. An "incapacitated citizen" according to Ukrainian law includes a person who has reached the age at which they have a right to a pension. Given this is a pre-answer motion to dismiss without the benefit of any discovery, considering New York's public policy in resolving cases on the merits as opposed to picayune technicalities, and given the supporting documentation that the Kuvshynovs' are compulsory heirs and representatives of Kuvshynova's estate by operation of Ukrainian law, the Court declines, at this juncture to dismiss the Kuvshynovs' wrongful death claims (see, e.g. Maestracci v Helly Nahmad Gallery, Inc., 155 AD3d 401, 403 [1st Dept 2017] [affidavit from an expert in law of the foreign jurisdiction concerning inheritance rights and an "acte de notariete" certifying the party's right to pursue claims on behalf of the state is sufficient to withstand a motion to dismiss]). In any event, where there are issues of fact as to a party's standing, dismissal is inappropriate (see DLJ Mortgage Capital v Mahadeo, 166 AD3d 512, 513 [1st Dept 2018]).
Defendants' argument that the Kuvshynovs failed to satisfy CPLR 3016(e) by not identifying the substance of the Ukrainian law under which they seek damages is without merit. The Kuvshynovs have amplified their allegations through the affidavit of Denys Mamontov, a Ukrainian attorney who submitted a lengthy and detailed legal opinion on the Kuvshynovs' right to sue with citations to applicable Ukrainian statutes (see NYSCEF Doc. 107; see also AG Capital Funding Partners, L.P. v State Street Bank and Trust Co., 5 NY3d 582 [2005] [on a motion to dismiss, a complaint may be amplified by supplemental pleadings and other evidence to remedy any deficiencies]).
Similarly unavailing is Defendants' argument that the Kuvshynovs have not identified any positive law under the Ukrainian Criminal Code to predicate their claimed moral damages. The Kuvshynovs, through the affidavit of their Ukrainian law expert, Denys Mamontov, claim a violation of Ukrainian Criminal Code 367, which governs acts of official negligence, in which corporations may be liable due to the negligent acts of the corporation's officials. Although Defendants' expert claims the Criminal Code 367 does not apply to the facts of this case, this is contradicted by Plaintiffs' expert.
Moreover, as this is a pre-answer motion to dismiss, where facts have not yet been uncovered through discovery, the Court finds it premature to rule summarily that Ukrainian Criminal Code 367, or some other section of Ukrainian law, cannot serve as a predicate violation for the Kuvshynovs' claim for moral damages. Plaintiffs have not been afforded the benefit of [*4]discovery to uncover facts in support of their application of Ukrainian Criminal Code 367.[FN2]
While Defendants claim whether the law applies is a legal issue which may be determined on a motion to dismiss, this is not the case where, as here, the underlying facts to determine whether a violation of certain articles of the Ukrainian Civil and Criminal Codes have been violated must be uncovered through discovery. Contrary to Defendants' position, their expert, Mr. Medvedev's opinion is just that: an opinion. That Mr. Medvedev and Mr. Mamontov have conflicting opinions as to the viability of the Kuvshynovs' claims only further highlights why the Kuvshynovs' case cannot be entirely disposed of at the pleading stage.
iii. Murdoch and Scott
The Fox Defendants' motion to dismiss Murdoch and Scott, who are alleged to be individually and personally liable for the acts of their co-defendants, is granted. Murdoch and Scott are dismissed without prejudice, with leave to replead should facts be uncovered during discovery implicating their affirmative negligence.
Generally, personal liability cannot be imposed on a corporate officer for nonfeasance or a failure to act (see Golub v Modern Yachts, LLC, 235 AD3d 404, 406 [1st Dept 2025] quoting Peguero v 601 Realty Corp., 58 AD3d 556, 559 [1st Dept 2009]). There must be specific alleged facts which give rise to a reasonable inference that the corporate officer affirmatively participated in the allegedly tortious acts (see RKA Film Fin., LLC v Kavanaugh, 162 AD3d 418, 419 [1st Dept 2018]). The allegations of domination and abuse of the corporate form are too vague and too conclusory to impose liability under a corporate veil piercing theory (see Max Markus Katz, P.C. v Sterling National Bank, 206 AD3d 533, 534-35 [1st Dept 2022]). Likewise, there are no particularized and specific factual allegations alleging that Scott affirmatively directed Hall to go beyond Kyiv's city limits without a security consultant. While Thomson submits an affirmation detailing the events that led to Kuvshynova death, he only refers to "Fox Officials" being on the call with no specific reference to Murdoch or Scott. Based on the inadequate allegations to hold Murdoch and Scott individually liable for tortious acts, the Court grants the motion to dismiss as to these defendants.
iv. Thomson's Claims
The Fox Defendants' motion to dismiss Thomson's claims is granted in part and denied in part. As a preliminary matter, the Fox Defendants are correct that punitive damages is not an independent cause of action. Therefore, to the extent punitive damages is asserted as its own cause of action as opposed to a demand for damages in a prayer for relief, it is dismissed.
The defamation claim is dismissed without prejudice because Thomson does not identify the particular words that were said, who said them, who heard them, when the speaker said them, and where the words were spoken (see, e.g. Hammond v Equinox Holdings LLC, 219 AD3d 406, 407-08 [1st Dept 2023] citing BCRE 230 Riverside LLC v Fuchs, 59 AD3d 282, 283 [1st Dept 2009]; see also Rubin v Napoli Bern Ripka Shkolnik, LLP, 151 AD3d 603, 604 [1st Dept 2017]; Bell v Alden Owners, Inc., 299 AD2d 207, 208 [remarks by unknown persons to unspecified individuals at dates, times and places left unspecified insufficient]). If Thomson can replead his defamation claims with greater specificity, he must do so within thirty days.
However, Thomson has adequately alleged a claim for tortious interference. Thomson alleged that shortly after the fatal incident, he was reassigned, then let go without explanation, and while subsequently working for Sky News in December of 2023, he was told by Fox employees that Fox made him the scapegoat for Zakrzewski and Kuvshynova's death, and that Fox was spreading a false story that Thomson had a drinking problem in Kyiv. Shortly after Thomson learned about Fox's scapegoating, Sky News allegedly fired Thomson, and Thomson has allegedly been unable since to gain employment.
For purposes of a pre-answer motion to dismiss, this is sufficient to allege tortious interference, especially if it can ultimately be proven that Fox fraudulently represented Thomson had a drinking problem and caused Zakrzewski and Kuvshynova's death in order to conceal its own liability and wrongdoing (see Guard-Life Corp. v S. Parker Hardware Mfg. Corp., 50 NY2d 183, 194 [1980] [tortious interference with at will employment contract upheld where the alleged means of interference involved fraudulent representations]). Given these factual allegations and because this is a pre-answer motion to dismiss, the branch of the motion seeking dismissal of the tortious interference claim is denied (see e.g. EPAC Technologies Ltd. v Interforum S.A., 217 AD3d 623, 624 [1st Dept 2023] [alleged fraudulent tactics such as lying about Plaintiff's performance and fabricating complaints sufficient to allege tortious interference with a contract claim]).
The Fox Defendants' motion to dismiss Thomson's intentional infliction of emotional distress claims is denied. Thomson alleges that despite not being contractually obligated to, the Fox Defendants required Thomson to transport personally Zakrzewski's body from Ukraine to Poland in the midst of an ongoing military invasion, and deliver Zakrzewski's body to his widow, while barring Thomson from disclosing any facts or circumstances about Zakrzewski's death to his widow. Fox then allegedly scapegoated Thomson for the incident, caused him to be fired, and spread false rumors about him throughout the industry. Despite requiring Thomson to engage in these emotionally traumatizing tasks, Fox allegedly never provided Thomson with any mental health resources and remained silent in the face of Thomson's requests for help, even after Thomson attempted to commit suicide. This is sufficient to allege a continuous pattern of extreme and outrageous conduct to invoke the continuing wrong exception to the statute of limitations and are sufficiently extreme and outrageous to allege intentional infliction of emotional distress (see, e.g. Silverman v Park Towers Tenants Corp., 206 AD3d 417, 418 [1st Dept 2022] citing Shannon v MTA Metro-N.R.R., 269 AD2d 218, 219 [1st Dept 2000]).
The Fox Defendants' motion to dismiss Thomson's negligent infliction of emotional distress claim based on the argument it did not owe Thomson, a contractor, any duty, is without merit. For purposes of a pre-answer motion to dismiss, it remains an issue of fact as to whether the Fox Defendants owed a duty of care to Thomson, a hired contractor in a war zone with whom they interacted regularly, and should have provided Thomson with mental health support and services after tasking him with transporting a colleague's body across a war zone and over an international boundary (see, e.g. Brown v New York Design Center, Inc., 215 AD3d 1, 3-4 [1st Dept 2023] [building owner owed duty to employees of businesses operating in building for purposes of negligent infliction of emotional distress claim]). 
Finally, the Court denies the Fox Defendants' CPLR 3211(g) motion. The Court finds that the speech targeted, namely rumors spread amongst the industry about a contractor's alcohol abuse, do not constitute public petition and participation within the meaning of Civil Rights Law § 76-a (see, e.g. Zaiger LLC v Bucher Law PLLC, 238 AD3d 687 [1st Dept 2025] [*5][communications sent to dissuade clients from continuing relationship with LLC constituted a private matter and was not shared on any platform accessible to general public]). The Court has considered the remainder of the Fox Defendants' contentions and finds them unavailing.
B. Hall's Motion to Dismiss (Mot. Seq. 002)
i. Personal Jurisdiction
Hall's motion to dismiss premised on the argument that this Court lacks personal jurisdiction is denied. A plaintiff bears the ultimate burden of proof on the issue of personal jurisdiction since they are the party seeking to assert it over a defendant. However, courts do not require the plaintiff to make a prima facie showing of personal jurisdiction, but only to demonstrate that facts "may exist" to exercise personal jurisdiction over the defendant (see CPLR 3211[d]; American BankNote Corp. v. Daniele, 45 AD3d 338, 340 [1st Dept 2007]).
Pursuant to CPLR 302(a)(1), a New York Court may exercise personal jurisdiction over a nondomiciliary if the nondomiciliary has purposefully transacted business within the state and there is "a substantial relationship between the transaction and the claim asserted" (Coast to Coast Energy, Inc. v Gasarch, 149 AD3d 485 [1st Dept 2017] quoting Paterno v Laser Spine Ins., 24 NY3d 370, 376 [2014]). A court must engage in a two-prong inquiry to determine (1) whether the defendant transacts any business in New York and, if so, (2) whether the cause of action arises from such a business transaction (Wilson v Danta, 128 AD3d 176 [1st Dept 2015]). A plaintiff does not need to have been involved in the transaction; rather, a plaintiff need only demonstrate that, considering all the circumstances, there is an articulable nexus or substantial relationship between the business transaction and the claim asserted (D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d 292, 298-299 [2017]; English v Avon Products, Inc., 206 AD3d 404 [1st Dept 2022]).
Here, Plaintiffs have alleged sufficient facts to establish personal jurisdiction over Hall (see generally Licci v Lebanese Canadian Bank, 20 NY3d 327 [2012]). During the course of the allegedly tortious activity, Hall repeatedly communicated with Fox employees in New York, provided broadcast material for New York, and was in search of broadcast material for the New York market at the time Kuvshnyova and Hall were injured by artillery shells. These facts alone are sufficient to invoke CPLR 302(a)(1) (see Al Rushaid v Pictet & Cie, 28 NY3d 316, 323 [2016]). Moreover, Hall's alleged contacts with New York, namely taking direction from, communicating with, and sending broadcasts to New York have a sufficient nexus to the Kuvshynovs' claims since their daughter was killed while generating media content for Fox's New York executives and the New York market. Given Hall's contacts with New York, including working with a New York publisher to publish a book about his experience in Ukraine, and because Hall is sharing counsel with the other Fox Defendants, Hall has failed to show how exercising jurisdiction over him would violate due process.
ii. Thomson's Claims
Hall's motion to dismiss is granted with respect to Thomson's claims, to the extent any are alleged. In opposition, Thomson devotes a single paragraph claiming Hall aided and abetted the Fox News Defendants in the commissioning of their alleged torts against Thomson. But nowhere is that alleged in the Amended Complaint as a cause of action, in violation of CPLR 3014. Therefore, to the extent Thomson alleges any claims against Hall, they are dismissed.
iii. Kuvshynovs' Claims
Hall's motion to dismiss the Kuvshynovs' Amended Complaint pursuant to CPLR 3211(a)(1) and (a)(7) is denied. Hall raises the same arguments as the Fox Defendants, which [*6]were rejected in Mot. Seq. 002.
Hall's argument regarding whether the Kuvshynovs adequately alleged fraud against him is misplaced. Hall is seeking the benefit of the release executed by the Fox Defendants, therefore so long as the Kuvshynovs adequately alleged grounds for this Court to find the release is not enforceable or does not pertain to the subject matter of this lawsuit, it is immaterial as to whether the Kuvshynovs adequately alleged fraud against Hall. In any event, to the extent Hall assisted Fox in covering up the true circumstances of Kuvshynova's death, as alleged in the Amended Complaint, Hall may be liable. 
To the extent the Kuvshynovs' claims can even be considered a SLAPP lawsuit, the Court finds dismissal under CPLR 3211(g) at this juncture unavailing, as the Kuvshynovs have alleged adequate facts for this Court to find there is a substantial basis in law for their claims as against Hall (see Smartmatic USA Corp. v Fox Corporation, 213 AD3d 512 [1st Dept 2023]). Specifically, the Kuvshynovs have alleged adequate facts to show that the Fox Defendants and Hall engaged in a cover up of the circumstances related to Kuvshynova's death to avoid liability, to preserve their own reputations, and for their own pecuniary gain, which at this juncture is sufficient to show statements made were false, or at least with reckless disregard for the truth. The Court has considered the remainder of Hall's contentions and finds them unavailing.
C. HarperCollins Defendants' Motion to Dismiss ("Mot. Seq. 004")
The HarperCollins Defendants' motion to dismiss is granted in part and denied in part. In opposition to the motion, Plaintiffs only oppose dismissal of aiding and abetting a fraud claim asserted against the HarperCollins Defendants. But there is no separate cause of action alleging aiding and abetting a fraud asserted against the HarperCollins Defendants in violation of CPLR 3014's requirement that causes of action shall be separately stated and numbered. Therefore, to the extent other claims were brought against the HarperCollins Defendants, they are dismissed as abandoned (Saidin v Negron, 136 AD3d 458, 459 [1st Dept 2016]).
Even if the Court were to construe the Complaint liberally and find an aiding and abetting fraud claim, it still would fail to state a claim. The sole allegation against the HarperCollins Defendants' is that they published a book authored by Hall which contained a misrepresentation that Hall believed at the time he ventured out of Kyiv that Russian troops were 30 miles away. It is further alleged that the HarperCollins Defendants were an "instrumentality" of the Fox Defendants in covering up their responsibility for the incident. In opposition to the motion, the Kuvshynovs admit in their affirmations that they did not even read the book published by the HarperCollins Defendants, which is fatal to their alleged aiding and abetting fraud claims. Therefore, the Amended Complaint as asserted against the HarperCollins Defendants is dismissed.
While the HarperCollins Defendants may have established that the speech targeted, namely publishing a book about Hall's experience during the invasion of Ukraine, involves speech targeted to a public forum on an issue of public interest, in what appears to be a matter of first impression, the Court finds that the drafters of the amended Civil Rights Law §§ 70-a and 76-a could not have intended for it to be used to impose mandatory attorneys' fees against the plaintiffs like the Kuvshynovs, who are grieving parents from a war-torn country and are trying to hold responsible individuals and entities who allegedly caused their daughter's death and then attempted to cover up their wrongdoing. There is support for this finding in the text of amended Civil Rights Law § 70-a(1)(a), which requires an award of fees "upon a demonstrating, including an adjudication pursuant to [CPLR 3211(g)] or [CPLR 3212(h)], that the action involving public [*7]petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law."
Crucial to the Court's finding that the HarperCollins Defendants are entitled to dismissal of the Kuvshynovs' Amended Complaint but not attorneys' fees is the portion of Civil Rights Law § 70-a(1)(a) that requires a showing that the action against the HarperCollins Defendants "could not be supported by a substantial argument for the extension, modification or reversal of existing law." It is axiomatic that when interpreting a statute, the words must be harmonized and read together to avoid surplusage (see Andryeyeva v New York Health Care, Inc., 33 NY3d 152, 176 [2019]). To avoid surplusage or meaningless language, Civil Rights Law § 70-a(1)(a) must be interpreted to contain three requirements to trigger a mandatory fee award: (1) the action must involve public petition and participation; (2) the action was commenced without a substantial basis in law, and (3) the action could not be supported by a substantial argument for the extension, modification or reversal of existing law. The third requirement in Civil Rights Law § 70-a(1)(a) cites, almost verbatim, the standard for imposing sanctions for frivolous conduct as found in 22 NYCRR 130-1.1(c)(1).[FN3]
 Therefore, to trigger an award of mandatory fees under Civil Rights Law § 70-a(1)(a) it must not only be demonstrated that the action was commenced without a substantial basis in law, but that the action was in and of itself frivolous.
While the Court agrees with the HarperCollins Defendants that Plaintiffs failed to state a claim against it, the Court disagrees that the sole claims opposed on this motion to dismiss, namely the aiding and abetting fraud claims, were frivolous. While the Court finds there were insufficient facts alleged to show that the HarperCollins Defendants aided and abetted the alleged fraudulent coverup of Kuvshynova's death, that does not mean that there was not a good faith argument made that related corporations could aid and abet one another in committing fraud in an attempt to mask or obfuscate potential liability (see, e.g. U.S. Tsubaki Holdings, Inc. v Estes, 194 AD3d 590, 591 [1st Dept 2021]). Therefore, the Court declines to award mandatory attorneys' fees and costs under Civil Rights Law § 70-a(1)(a) because there has been no showing that the action against the HarperCollins Defendants "could not be supported by a substantial argument for the extension, modification or reversal of existing law."
Moreover, the legislative history of the amended Anti-SLAPP laws supports a finding that the punitive fee provision was not meant to apply to a case like this, where a large corporation moves to dismiss and seeks attorneys' fees against two grieving parents in a country that has experienced a brutal multi-year invasion. It is well established that a court may use legislative history to construe a statute no matter how clear the words of that statute may appear, for the primary consideration in interpreting a statute is to ascertain and give effect to the intention of the Legislature (see Sprint Communications Co., L.P. v City of New York Dept. of Finance, 152 AD3d 184, 189 [1st Dept 2017] quoting Riley v County of Broome, 95 NY2d 455, 463 [2000]).
The Senate Sponsor's Memorandum states:
"Section 76-a of the Civil Rights Law was originally enacted by the Legislature to [*8]provide 'the utmost protection for the free exercise[,] speech, petition, and association rights, particularly where such rights are exercised in a public forum with respect to issues of public concern.' L. 1992 Ch. 767. However, as drafted, and as narrowly interpreted by the courts, the application of Section 76-a has failed to accomplish that objective. In practice, the current statute has been strictly limited to cases initiated by persons or business entities that are embroiled in controversies over a public application or permit, usually in a real estate development situation. Meanwhile, many frivolous lawsuits are filed each year that are calculated solely to silence free speech and public participation, which do not specifically arise in the context of the public 'permit' process. By revising the definition of an 'action involving public petition and participation,' this amendment to Section 76-a will better advance the purposes that the Legislature originally identified in enacting New York's anti-SLAPP law. This is done by broadly widening the ambit of the law to include matters of 'public interest', which is to be broadly construed, e.g. anything other than a 'purely private matter'.''Additionally, the principal remedy currently provided to victims of SLAPP suits in New York is almost never actually imposed. The courts have failed to use their discretionary power to award costs and attorney's fees to a defendant found to have been victimized by a frivolous lawsuit intended only to chill free speech. By an award of costs and fees, the Legislature had originally intended to address 'threat of personal damages and litigation costs ... as a means of harassing, intimidating, or punishing individuals, unincorporated associations, not-for-profit corporations and others who have involved themselves in public affairs.' L. 1992 Ch. 767. This amendment to Section 70-A of the Civil Rights Law makes clear that a court 'shall' impose an award of costs and fees, but only if the court [finds] [sic] that the case has been initiated or pursued in bad faith. Together, the two amendments will protect citizens against the threat — and financial reality — of abusive litigation, but will not discourage meritorious litigation.''Further, a mandatory award of attorney's fees is necessary to discourage SLAPP lawsuits — which attempt to chill free speech by definition — from being instituted" (Senate Sponsor's Mem, Bill Jacket, L 2020, ch 250).As made clear by this legislative history, the Legislature only intended mandatory costs and fees to be applied where the Court finds litigation was commenced in bad faith. The Legislature further made clear that the amendment was made to protect citizens from the financial impact of abusive litigation, and to discourage litigation that chills free speech. The Court finds that this litigation was not commenced by the Kuvshynovs in bad faith, nor does it find that the HarperCollins Defendants have shown they suffered the kind of significant financial impact from this allegedly abusive litigation to warrant costs and fees. Finally, and perhaps most importantly, there has been no showing that the HarperCollins Defendants free speech has in any way been chilled, at least not in any way rising above a de minimis level, from this lawsuit. Therefore, the HarperCollins Defendants' motion for attorneys' fees and costs pursuant to Civil Rights Law § 70-a(1)(a) is denied, but the remainder of their motion to dismiss is granted.
Accordingly, it is hereby,
ORDERED that the Fox Defendants' motion (Mot. Seq. 002) to dismiss Plaintiffs' Amended Complaint is granted to the extent that Murdoch and Scott are dismissed, without prejudice and with leave to replead should discovery uncover their substantial involvement in the [*9]tortious acts alleged by Plaintiffs and is further granted to the extent that Thomson's stand alone cause of action for punitive damages is dismissed, and Thomson's defamation claim against the Fox Defendants is dismissed, without prejudice, with leave to replead within thirty days with the requisite factual specificity within thirty days, if possible, and the remainder of the Fox Defendants' motion is denied; and it is further
ORDERED that Hall's motion (Mot. Seq. 003) to dismiss Plaintiffs' Amended Complaint is granted solely to the extent that Thomson has alleged any claims against Hall, those claims are dismissed, and the remainder of Hall's motion is denied; and it is further
ORDERED that the HarperCollins Defendants' motion (Mot. Seq. 004) to dismiss Plaintiffs' Amended Complaint is denied solely to the extent that this Court declines to award the HarperCollins Defendants' attorneys fees and costs pursuant to Civil Rights Law § 70-a(1)(a), but the remainder of the HarperCollins Defendants' motion is granted, and the Amended Complaint as asserted against the HarperCollins Defendants is hereby dismissed; and it is further
ORDERED that within twenty days of entry, counsel for the Fox Defendants and Hall shall serve an Answer to Plaintiffs' Amended Complaint; and it is further
ORDERED that the parties shall meet and confer immediately and submit a proposed preliminary conference order, but in no event shall the proposed order be submitted any later than February 11, 2026. If there is a serious discovery dispute preventing the parties from submitting proposed preliminary conference order, they shall contact the Court so a conference may be scheduled; and it is further
ORDERED that within ten days of entry, counsel for Plaintiffs shall serve a copy of this Decision and Order, with notice of entry, on all parties via NYSCEF.
This constitutes the Decision and Order of the Court.

Footnotes

Footnote 1:Prior to travelling to Ukraine, Hall reported from war-torn Syria regarding military operations against the Islamic State of Iraq and Syria ("ISIS"), and allegedly had a reputation for reckless and dangerous reporting.

Footnote 2:The Court finds it highly implausible that there is a "black hole" in Ukrainian law that does not afford redress to the representatives of a decedent's estate against a corporation whose negligent acts allegedly caused the decedent's death.

Footnote 3:This section, which governs when a Court can award costs and sanctions, defines frivolous conduct as being "completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law".